973 F.2d 507
 BASICOMPUTER CORPORATION, Plaintiff-Appellee,
Cross-Appellant (92-3323),
v.
Frank SCOTT; Lydia Prokop; James Noble; Thomas Schlotter;
and Susan Westburg, Defendants-Appellants
(92-3104/3322), Cross-Appellees.
 Nos. 92-3104, 92-3322 and 92-3323.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 7, 1992.
Decided Sept. 8, 1992.
 
 Steven J. Miller (argued), Richard S. Mitchell, Robert A. Goodman, Daniel D. Domozick (briefed), Goodman, Weiss & Freedman, Cleveland, Ohio, for plaintiff-appellee, cross-appellant.
 Keith A. Savidge (argued and briefed), Carter R. Dodge, Seeley, Savidge & Aussem, Cleveland, Ohio, for defendants-appellants, cross-appellees.
 Before: GUY and RYAN, Circuit Judges; and HULL, Chief District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 The plaintiff brought this action for damages and injunctive relief against five of its former employees, alleging that the employees breached non-competition and confidentiality covenants by working for a rival corporation. After the district court granted the plaintiff's request for a preliminary injunction to enforce the covenants, the defendants filed this interlocutory appeal. The plaintiff cross-appeals from a modification of the injunction that shortened the duration of the non-competition covenant for two of the defendants. We affirm the issuance of the original preliminary injunction and vacate the modification of that injunction.
 
 I.
 
 2
 The plaintiff, Basicomputer Corporation (Basic), is headquartered in Akron, Ohio, and has local sales and service offices in nine cities. Basic buys computer equipment from major manufacturers and sells computing systems to corporate clients. Basic's local office in White Plains, New York, serves clients in the New York metropolitan area.
 
 
 3
 Until 1989, two of the defendants, Frank Scott and Lydia Prokop, owned Scott Electronics, a computer firm located in White Plains. The remaining three defendants, Susan Westburg, James Noble, and Tom Schlotter, worked as sales representatives for Scott Electronics.
 
 
 4
 In August 1989, Basic established its White Plains office by purchasing Scott Electronics, including its customer list, for $2.2 million. As part of the transaction, Scott and Prokop executed employment contracts in which they agreed to stay on as manager and assistant manager, respectively, of Basic's office.
 
 
 5
 Basic's standard employment contract contains a covenant not to compete. That covenant provides, in relevant part:
 
 
 6
 Employee shall not during his/her employment accept employment or receive any compensation of any kind whatsoever from any of the Corporation's prospects, customers, suppliers, competitors, or their agents, representatives, etc., nor for a period of one (1) year thereafter sell or work with anyone who sells microcomputer equipment, software, accessories, etc., within fifty (50) miles of any of the Corporation's stores or sales offices or work for or with any of the Corporation's suppliers.
 
 
 7
 (Emphasis added).
 
 
 8
 Each contract also contains a covenant not to disclose proprietary information, confidential information, or trade secrets, including the identity of customers and the prices at which Basic sells its goods and services. The contract bars an employee from removing any confidential information from the office except in the normal conduct of business. A forum selection clause provides that actions arising out of the contract would be brought "in courts in the State of Ohio and the parties consent to jurisdiction thereof."
 
 
 9
 Before the purchase was consummated, Westburg, Noble, and Schlotter travelled to Basic's Akron headquarters for orientation. Basic offered continued employment to the three, but advised them that they would have to sign employment contracts containing the covenants. When the three expressed concern about the covenant not to compete, Basic agreed to modify that covenant so that it would not apply to them if they left Basic before November 19, 1989. On September 1, 1989, ten days after Basic purchased Scott Electronics, Westburg, Noble, and Schlotter executed employment agreements containing all of the covenants.
 
 
 10
 In August and September 1991, the five defendants left Basic to work for a Sears, Roebuck & Co. computer sales facility in Norwalk, Connecticut, approximately 20 miles from Basic's White Plains office. Prokop and Scott assumed managerial positions at Sears, while Westburg, Noble, and Schlotter began work as sales representatives.
 
 
 11
 Before leaving Basic, each of the defendants removed documents containing customer information. With the possible exception of Scott, each contacted Basic's clients to solicit business shortly after arriving at Sears.
 
 
 12
 Basic filed this action in October 1991. Basic's complaint alleged that the court had diversity jurisdiction over the parties since Basic is a Delaware corporation headquartered in Ohio, the defendants are all citizens of New York or Connecticut, and the amount in controversy exceeded $50,000. Basic sought damages and injunctive relief.
 
 
 13
 Basic requested a preliminary injunction to enforce the covenants while the action was pending. The court issued the injunction on December 26, 1991. Basicomputer Corp. v. Scott, 791 F.Supp. 1280 (N.D.Ohio 1991). The injunction bars Scott and Prokop from working at Sears for one year. However, the court modified the non-competition covenant for Westburg, Noble, and Schlotter so as to bar them from working at Sears for only six months. Additionally, the preliminary injunction bars all five defendants from violating the confidentiality provisions of their employment contracts. Although Basic had requested that the preliminary injunctions run from the date the court entered the order, the order did not specify when the injunctions began running.
 
 
 14
 The defendants filed this interlocutory appeal in January 1992 and filed a motion in the district court to stay the preliminary injunction pending appeal. The district court denied the motion.
 
 
 15
 Westburg then filed a motion in the district court for permission to resume work at Sears, pointing out that six months had elapsed from the date when she left Basic. In a February 28, 1992, order denying Westburg's motion, the court explained that the injunction began running on December 26, 1991, but that the non-competition period could not extend more than one year beyond the date an employee left Basic. Thus, the portion of the injunction that enforced the non-competition covenant would expire on June 26, 1992, for Westburg, Noble, and Schlotter; and on August 30, 1992, for Scott and Prokop. Both sides filed interlocutory appeals from the February 28 order, and we consolidated those appeals with the defendants' earlier appeal.
 
 II.
 
 16
 Before turning to the merits, we must determine if the district court properly exercised jurisdiction over this dispute. The defendants maintain that the district court lacked diversity jurisdiction because Basic failed to establish that the amount in controversy exceeds $50,000. See 28 U.S.C. § 1332(a). Alternatively, they argue that the forum selection clause precluded the court from exercising jurisdiction.
 
 
 17
 A court must not dismiss an action for failure to meet the amount in controversy requirement unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). A complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses. See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 348, 97 S.Ct. 2434, 2444, 53 L.Ed.2d 383 (1977).
 
 
 18
 The court did not err in concluding that Basic met the amount in controversy requirement. Each of the defendants generated sales worth well over $100,000 per year while they worked for Basic. In addition, Basic alleged that it suffered severe competitive losses from the mass departure of the defendants to Sears and from the defendants' alleged attempts to lure Basic's clients to Sears. Since there is no legal certainty that Basic's claims are worth less than $50,000, we affirm the district court's finding that it had diversity jurisdiction over this dispute.
 
 
 19
 The defendants next argue that the district court erred by exercising that jurisdiction. The defendants contend that the forum selection clause in Basic's employment contract required Basic to bring this action in an Ohio state court. That clause required the parties to litigate contract disputes "in courts in the State of Ohio." Since the federal district court for the Northern District of Ohio is unquestionably a court "in the State of Ohio," the forum selection clause is not limited to Ohio state courts. Cf. Spatz v. Nascone, 364 F.Supp. 967 (W.D.Pa.1973) (requiring resolution in state court where forum selection clause specified courts of the Commonwealth of Pennsylvania). Accordingly, we affirm the district court's decision to exercise its jurisdiction.[1]
 
 III.
 
 20
 The defendants argue that the district court erred by entering a preliminary injunction to enforce the restrictive covenants. First, they maintain that the restrictive covenants are unenforceable against Westburg, Noble, and Schlotter because Basic forced those three employees to sign the covenants under duress and did not provide them with any consideration. Second, they maintain that Basic failed to establish any irreparable injury justifying the entry of a preliminary injunction. Third, they contend that the injunction is overbroad. We address these arguments in turn.
 
 A.
 
 21
 Westburg, Noble, and Schlotter maintain that Basic obtained their signatures on the restrictive covenants without consideration and under duress. These contentions turn on the fact that these three employees did not sign their contracts until 10 days after they began working for Basic. Basic allegedly told the three that they would not be paid for the work they had already performed unless they signed the covenants.
 
 
 22
 The district court found, however, that Basic informed Westburg, Noble, and Schlotter that they would have to sign the covenants before they began working for Basic. When they expressed concern about the covenants, Basic agreed to modify them so that they would not apply if the employee left in the first few months of employment. Each employee signed a rider that explicitly confirmed that he or she understood, prior to beginning employment, that signing the covenants was a condition of employment.
 
 
 23
 Therefore, this is not a case where an employer requires a current employee to sign a restrictive covenant as a condition of continued employment. Cf. Prinz Office Equip. Co. v. Pesko, No. 14155, 1990 WL 7996 (Ohio Ct.App. Jan. 31, 1990) (restrictive covenant presented for first time to employee after employee began work unenforceable for lack of consideration). When, as here, an employee begins work with the understanding that a covenant is a condition of employment, the covenant is adequately supported by consideration even if it is not signed until later. See Myers Servs., Inc. v. Costello, CA-917, 1989 WL 76464 (Ohio Ct.App. June 26, 1989).
 
 
 24
 Similarly, the claim that Basic extracted the covenants under duress must fail. Westburg, Noble, and Schlotter attempt to characterize Basic's actions as extorting the covenants by threatening to withhold their pay. Since the district court found that Westburg, Noble, and Schlotter knew that Basic required them to sign the covenants as a condition of employment before they began working, Basic's refusal to pay them until they signed did not amount to illegal economic coercion. Cf. Mancino v. Friedman, 69 Ohio App.2d 30, 429 N.E.2d 1181, 1186 (1980).
 
 B.
 
 25
 The defendants next argue that the district court erroneously found that Basic would suffer irreparable harm in the absence of a preliminary injunction. When deciding whether to issue a preliminary injunction, a district court should address four factors: (1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259, 262 (6th Cir.1988). We review the district court's determination for abuse of discretion, and we accept the court's findings of fact unless clearly erroneous. Id.
 
 
 26
 The defendants correctly point out that a plaintiff's harm is not irreparable if it is fully compensable by money damages. However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir.1984).
 
 
 27
 The district court concluded that Basic had established that it would suffer irreparable injury in the absence of a preliminary injunction. Specifically, the court found that Basic had suffered, and would continue to suffer, competitive losses and losses of customer goodwill as a result of the defendants' actions.
 
 
 28
 The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. See Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1449 (11th Cir.1991). Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer. See Overholt Crop Ins. Serv. Co. v. Travis, 941 F.2d 1361, 1371 (8th Cir.1991) (holding that irreparable harm can be inferred from insurance sales representatives' breach of non-competition covenant).
 
 
 29
 The defendants claim that the testimony of Frank Brick, Basic's president, shows that Basic would have been able to calculate the damages in six to twelve months. Our review of Brick's testimony reveals that he did not state that Basic would be able to calculate all of the damages in that time period; instead, he testified that he could not estimate the "direct harm to Basicomputer" for six to twelve months. (Emphasis added). Brick went on to explain that there was no way for him to measure the "unfair price situation" in which Basic found itself in competition with Sears.
 
 
 30
 The record contains ample evidence to support the court's findings that the defendants had access to confidential customer information at Basic, that they removed much of this information when they left Basic for Sears, and that they promptly began contacting Basic's customers after arriving at Sears. In addition, the defendants had access to Basic's pricing information and could use that information to underbid Basic.
 
 
 31
 These facts are sufficient to support a finding that Basic would suffer competitive injury and loss of customer goodwill from the defendants' alleged breach of their covenants. Since competitive injuries and loss of goodwill are difficult to quantify, the court did not err in finding that Basic would suffer irreparable harm in the absence of an injunction.
 
 C.
 
 32
 The defendants argue that the non-competition covenant is unenforceable because it is overbroad. Under Ohio law, a court must examine a non-competition covenant to determine the reasonableness of the restrictions. Raimonde v. Van Vlerah, 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975). To make that determination, the court should consider the absence or presence of a long list of factors: whether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment. Id.
 
 
 33
 The Raimonde court summarized these factors by concluding that a non-competition covenant "is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." Id. If the covenant does impose unreasonable restrictions, the court still must enforce the covenant "to the extent necessary to protect the employer's legitimate interests." Id.
 
 
 34
 The district court weighed each of the factors prescribed in Raimonde and concluded that the non-competition covenant is reasonable as applied to Scott and Prokop.[2] We agree.
 
 
 35
 Scott and Prokop were not mere employees; they were highly-paid managers. Indeed, Basic had paid Scott and Prokop $2.2 million to purchase their company. Scott and Prokop had access to Basic's most sensitive pricing and customer information for use in procuring and servicing clients in the New York area.
 
 
 36
 The covenant is limited to one year. That period is reasonable in light of Brick's testimony that it takes up to a year to cultivate a new client and that the defendants' presence at Sears would give Sears a competitive advantage in gaining new clients. In addition, the covenant does not completely deprive Scott and Prokop of their livelihood for the year, since they are free to work more than 50 miles from the White Plains office. Cf. Rogers v. Runfola & Assocs., Inc., 57 Ohio St.3d 5, 565 N.E.2d 540, 544 (1991) (modifying covenant to bar former court reporter employees from competing only within city limits).
 
 
 37
 We find that the district court properly weighed the factors to be considered in deciding whether to enforce the non-competition covenant. Accordingly, we affirm the court's decision to issue the preliminary injunction.
 
 IV.
 
 38
 Finally, we must consider the district court's order of February 28, 1992. In its cross-appeal, Basic argues that the defendants' first notice of appeal deprived the district court of jurisdiction to substantially modify the preliminary injunction and that the February 28 order is therefore a nullity. Alternatively, Basic maintains that the district court misapplied Ohio law when it decided to shorten the length of the non-competition covenant as to Scott and Prokop.
 
 
 39
 Basic concedes that Federal Rule of Civil Procedure 62(c) allows a district court to modify a preliminary injunction during the pendency of an interlocutory appeal. However, Basic argues that a court's power is limited to modifications that preserve the status quo.
 
 
 40
 Basic's view has found support in at least three circuits. See Coastal Corp. v. Texas E. Corp., 869 F.2d 817, 820 (5th Cir.1989); Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 n. 1 (9th Cir.1984); Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 625 (2d Cir.1962). However, at least two other circuits have concluded that, in some circumstances, a district court may alter the status quo by modifying an injunction during the pendency of an appeal. See Board of Educ. of St. Louis v. State of Missouri, 936 F.2d 993, 996 (8th Cir.1991); Ortho Pharmaceutical Corp. v. Amgen, Inc., 887 F.2d 460, 464 (3rd Cir.1989).
 
 
 41
 We need not weigh in on this controversy in order to resolve this case. We agree with Basic that the February 28 modification changed the status quo by shortening the period during which Prokop and Scott may not compete. Thus, if we were to agree that a district court may not change the status quo by modifying a preliminary injunction during the pendency of an appeal, we would vacate the February 28 order. However, even if we held that the district court may change the status quo during the pendency of an appeal, we still would vacate the February 28 order because we find that it is based on an erroneous view of Ohio law.
 
 
 42
 The district court found that the modification was mandated by our decision in Moraine Industrial Supply, Inc. v. Sterling Rubber Products Co., 891 F.2d 133, 135-36 (6th Cir.1989), in which we held that a preliminary injunction enforcing a non-competition agreement could not extend beyond the expiration date of the agreement. However, the Ohio Supreme Court recently rejected Moraine Industrial as "unpersuasive." Runfola, 565 N.E.2d at 544. In Runfola, the court modified the trial court's injunction so as to enforce a non-competition covenant for one year from the date of the court's order even though that period extended beyond the expiration of the covenant. Id.; see also Raimonde, 325 N.E.2d at 548 (upholding three-year injunction extending beyond expiration of covenant).
 
 
 43
 The construction of the covenant and its enforceability are questions of Ohio law. Since the Ohio Supreme Court has spoken on this issue and rejected our holding in Moraine Industrial, the district court erred by modifying the covenant as to Scott and Prokop. Accordingly, we vacate the district court's order of February 28, 1992.[3]
 
 V.
 
 44
 In summary, we AFFIRM the district court's decision to issue the preliminary injunction, and we VACATE the district court's order of February 28, 1992, insofar as it modifies the injunction as to Scott and Prokop. Finally, we REMAND to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Thomas G. Hull, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The portion of the preliminary injunction that barred Westburg, Noble, and Schlotter from competing expired on June 26, 1992. We requested the parties to address whether the passing of the expiration date mooted this interlocutory appeal as to those three defendants. See University of Texas v. Camenisch, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981); UAW v. Dana Corp., 697 F.2d 718, 721-22 (6th Cir.1983). We conclude that this interlocutory appeal is not moot as to Westburg, Noble, and Schlotter because some of the defendants' claims arguably implicate the portion of the preliminary injunction that enforced the confidentiality covenant as well as the portion that enforced the non-competition covenant. The injunction did not specify an expiration date for the enforcement of the confidentiality covenant
 
 
 [2]
 The court concluded, however, that the non-competition covenant's one-year period was too long as applied to Westburg, Noble, and Schlotter. Accordingly, the court enjoined them from competing for only six months. Since that portion of the injunction expired on June 26, 1992, challenges to the enforcement of the non-competition covenant are moot as to Westburg, Noble, and Schlotter. See discussion supra note 1
 
 
 [3]
 Of course, the district court may modify the injunction on remand. We hold only that the court erred in relying on Moraine Industrial to conclude that the duration of the injunction had to be shortened