**UNIROYAL GOODRICH TIRE COMPANY, Plaintiff,**

v.

**William L. HUDSON, a/k/a Willie L. Hudson, Defendant.**

**No. 93–CV–74346–DT.**

United States District Court, E.D. Michigan, Southern Division.

June 28, 1994.

Edward M. Kronk, Phillip C. Korovesis, Butzel Long, Detroit, MI, for plaintiff.

Angela J. Nicita, Courtney E. Morgan, Jr., Chambers, Steiner, Mazur, Ornstein, & Amlin, P.C., Detroit, MI, for defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION*

ZATKOFF, District Judge.

This matter is before the Court on defendant's Motion to Dissolve the Preliminary Injunction issued by this Court on November 4, 1993, and modified on March 16, 1994. Defendant filed the motion on April 11, 1994. Plaintiff has filed a response.

The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, defendant's motion is DENIED.

## I. BACKGROUND

Defendant Hudson was employed by the Uniroyal Goodrich Tire Company (and its predecessor) (hereinafter "UGTC") from 1966 to 1991. During that time he executed two company secrecy and noncompete agreements. The 1991 agreement prohibited Hudson from disclosing or using UGTC's trade secrets and confidential or proprietary information during or after he left the company.

Hudson is now employed by Kurt Scientific Counselors, in Royal Oak, Michigan. Kurt has been retained by two plaintiffs to give expert testimony in products liability actions now pending in state court in Georgia. UGTC is the defendant in each case, and Hudson has been listed as an expert witness for plaintiff in each case.

UGTC filed interrogatories seeking disclosure of expert witnesses and their expected testimony in the two Georgia actions. The responses indicated that Hudson's testimony would conflict with the secrecy and non-compete agreements he has signed with UGTC.

On October 18, 1993, this Court entered a Temporary Restraining Order preventing the defendant, Willie Hudson, from testifying in deposition as an expert witness in the products liability actions against his former employer. UGTC then sought a preliminary injunction to prevent Hudson from disclosing—or further disclosing—any information to plaintiffs, plaintiffs' counsel or others.

This Court granted the PI on November 4, 1993. The PI prohibited Hudson from use or

disclosure of confidential information, except in "a proceeding of a court of record."

UGTC subsequently alleged that Hudson violated both the TRO and the PI, and brought a motion to find defendant in contempt. Following oral arguments and a review of the file and pleadings, this Court did find defendant in contempt. On March 16, 1994, the Court enjoined defendant Hudson from testifying for, or maintaining any contact with attorneys for the plaintiffs in the "*Ford*" litigation pending in the Georgia court.

Defendant has now filed, concurrent with several other motions, a Motion to Dissolve the Preliminary Injunction issued by this Court on November 4, 1993, as modified by the Court's Opinion and Order of March 16, 1994. Plaintiff has replied.

## II. STANDARDS

When addressing the plaintiff's initial motion for a Preliminary Injunction on November 4, 1993, the Court addressed and outlined Fed.R.Civ.P. 65, and applicable case law relating to the issuance of Preliminary Injunctions in the Sixth Circuit. The parties are referred to this Court's previous opinion, as an extensive recitation here would be cumulative.

The four factors that this Court must address in ruling on plaintiff's motion for a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure are as follows:

1. The likelihood of success on the merits of the action;
2. the irreparable harm that could result if the court did not issue the injunction;
3. the impact on the public interest; and
4. the possibility of substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262, 5 U.S.P.Q. 1510 (6th Cir.1988).

The dissolution of a Preliminary Injunction is within the sound discretion of the Court, and can be set aside only if it is based upon an error of law or constitutes an abuse of discretion. *In re: DeLorean Motor Company,* 991 F.2d 1236, 1242 (6th Cir.1993) (*citing*

*Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 354 (10th Cir.1986)).

This Court previously evaluated the factors outlined by *Forry,* and determined that entry of a preliminary injunction was appropriate. On this Motion to Dissolve, the defendant must show a change of circumstances, which, upon reevaluation, warrants a different outcome. Accordingly, the Court shall address the factors, as outlined above, in light of defendant's motion and plaintiff's response.

## III. OPINION

Defendant's arguments essentially challenge two of the four elements. A discussion of each, however, follows.

### A. Likelihood of Success on the Merits

This Court's previous ruling resulted from the determination that it "appears that Hudson's proposed testimony directly conflicts with the secrecy and non-compete agreement that he signed." Opinion, November 4, 1993, p. 6. The Court examined the Contract provisions in question, and determined that, following Ohio and Sixth Circuit precedent, the apparent violation justified the issuance of a PI. Opinion, November 4, 1993, p. 8.

This Court again notes that UGTC is not required to prove all elements of its case in order to seek a Preliminary Injunction. Instead, the Court must "satisfy itself, not that [UGTC] certainly has a right, but. that [it] has a fair question to raise as to the existence of such a right." *Brandeis Machinery & Supply Corp. v. Barber–Greene Co.,* 503 F.2d 503, 505 (6th Cir.1974).

This Court was satisfied following the initial review that plaintiff had made such a showing. In the November 4, 1993 Opinion this Court held:

After a review of the parties' briefs, the relevant law, and the various affidavits, this Court finds that plaintiff has shown that there is a strong or substantial likelihood that it will prevail on the merits of its

claim against defendant. Plaintiff has therefore met this element of the analysis. Opinion, November 4, 1994, p. 8–9

The defendant again challenges the likelihood of plaintiff's success. Defendant Hudson makes two arguments that as of December 31, 1993, he is no longer bound by the confidentiality provisions of the noncompete agreements he signed.

■ Defendant first argues that the durational period of two years, contained in the noncompete clause of the 1991 contract, governs the nondisclosure clause of the contract as well. The nondisclosure clause has no independent durational clause. Because the two-year period began to run upon termination of the employment relationship in 1991, the period expired December 31, 1993. Defendant thus contends that, pursuant to the contract, he is no longer barred from disclosure.

Defendant also argues, in the alternative, that, if the Court does not find that the intent of the contracts was such that the two-year period governs, then the Court must find that the contracts are ambiguous. The defendant then contends that, if the Court finds the contracts to be ambiguous, the Court must infer a reasonable time limitation. Defendant has offered case law as support for the position that two years is such a reasonable time period, and therefore, defendant is no longer bound.

The clauses in question, in pertinent part, are as follows:

As part of the terms and conditions of your employment by UGTC, and in consideration of the mutual promises contained in this Agreement, you agree as follows:

1. To maintain Information in confidence at all times during and after your employment whether acquired before this date or after, or in the course of or arising from your employment with UGTC. You specifically agree that you will not use any Information, independent of your work for UGTC and will not divulge Information to others, either during or after employment by UGTC, except as specifically authorized and required by your duties to UGTC.

\* \* \* \* \* \*

6. That you will not, for a period of two (2) years from the date of termination of your employment with UGTC, become associated with or employed by any individual, firm or corporation, in any capacity involving research in, production of, or use of technology related to the production, design or testing of tires or related products, or any component or element thereof, or in any process or facilities for the production of any product, component or element thereof, (i) which is competitive, or is foreseeably competitive with any product or component thereof which is the subject of previous, current, planned or anticipated UGTC research, design, development, manufacture or sale activity prior to or at the time of your termination. . . .

Upon a review of the contracts in general, and the clauses in particular, the Court disagrees with both of defendant's contentions. An examination of the contract, within its "four-corners," does not indicate in any way that the two-year limit of clause (6) was to govern clause (1). The two-year limitation appears in the latter, rather than the former, clause; the term is specific, precise, and set off by commas; and the term is in such a position that it can not be construed as modifying a clause which precedes it by two pages.

Moreover, noting that the Court has previously held that the 1987 and 1991 agreements are to be read together, the Court does not find that the two-year term can be construed to modify the confidentiality provisions of the 1987 contract.

In addition, the Court cannot find, as defendant suggests, that the intentions of the parties were unclear. Because the tire industry is a competitive and technology driven business, a two year covenant not to compete may be reasonable—offering sufficient protection to the former employer, and fairness to the employee—whereas a two year nondisclosure covenant may be insufficient to protect the employer. Accordingly, while the parties to the contract may find it reasonable that a former employee of UGTC could go to work for a competitor after two years, it may not be reasonable for a former employee to

divulge trade secrets and confidential information after two years.

Contrary to defendant's argument, the Court does not agree that a former employee going to work for a competitor must, necessarily, divulge trade secrets. Nor is the converse true, that a former employee can only divulge trade secrets while working for a competitor.

Plaintiff UGTC has contended that the nondisclosure clauses of the contracts are in effect as long as the information in question remains confidential. Plaintiff further contends that defendant has not shown that the information has lost its confidential nature.

This Court agrees with plaintiff's reading of the durational requirement of the contract. As for the confidential or nonconfidential nature of any information disclosed, that goes to the basic issue of this case. In order to show that a breach of contract has occurred, plaintiff must show that confidential information protected by the 1987 and 1991 agreements was divulged, and that the disclosure has caused UGTC an injury.

It was this Court's opinion, in granting the original Preliminary Injunction, that defendant had made a substantial showing of the possibility of success on the merits, such that the issuance of the PI was warranted. As that factor is evaluated here, the Court's opinion remains steadfast.

### B. Irreparable Injury

In the November 4, 1994, Opinion, the Court outlined the concerns and arguments regarding irreparable injury as such:

Plaintiff has argued in its original pleading that it will suffer irreparable harm in the absence of a Preliminary Injunction because disclosure of trade secrets or information would prove damaging in the competitive market. Plaintiff cites *Basicomputer Corp. v. Scott,* 973 F.2d 507 (6th Cir.1992) for the proposition that an injury is irreparable if not fully compensable in monetary terms. *Id.,* at 511. Moreover, plaintiff contends that prospective damages are not completely compensable where damages would be difficult to com-

pute. *Id.* Plaintiff argues that its damages are impossible to calculate due to the nature of the market in which it is involved.

During oral arguments, both sides conceded that once information is revealed in the Georgia proceedings, it can no longer be protected. Essentially, 'once it is out, it's out.'

Opinion, November 4, 1993, p. 9.

Defendant argued in opposition to the original PI, in his Motion for Dismissal for Lack of Subject Matter Jurisdiction, as well as in the instant motion, that plaintiff cannot show an irreparable—nor a compensable—injury. The Court again disagrees.

Defendant has argued that an attempt to prevent the flow of information in litigation is not a basis for an action nor for a recovery. Defendant argues that plaintiff must show a competitive injury related to an impermissible disclosure, and cites *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), for the proposition that

[t]he value of a trade secret lies in the competitive advantage it gives its owner over competitors. . . . If, however, a public disclosure of data reveals, for example, the harmful side effects of the submitter's product and causes the submitter to suffer a decline in potential profits from sales of the product that decline . . . [does not stem] from the destruction of an edge the submitter had over its competitors, and cannot constitute the taking of a trade secret.

*Id.,* at 1011, fn. 15, 104 S.Ct. at 2877, fn. 15.

Defendant emphasizes that the agreements can only protect plaintiff from a true competitive injury. The Court has repeatedly disagreed with that contention. The signed contract in question states that Hudson "will not divulge Information to others." [1] It does *not* state that Hudson "will not divulge Information to a competitor," or that Hudson "will not disclose Information which will cause a competitive injury." These are the readings which defendant has continually suggested, and the Court has continually rejected.

---

1. The clause at issue is quoted, in its entirety, at    p. 6, *infra.*

The Court does agree with defendant that plaintiff cannot use the clause in a manner which violates public policy, but does not agree that plaintiff has done so. Moreover, such a focusing of the issue cannot justify dissolving the Preliminary Injunction.

In fact, *Ruckelshaus*—the authority cited by defendant—also states:

> With respect to a trade secret, the right to exclude others is central to the very definition of the property interest. Once the data that constitutes a trade secret are disclosed to others, or others are allowed to use the data the holder of the trade secret has lost his property interest in the data.

*Id.*, at 1011, 104 S.Ct. at 2877. In essence, what the Supreme Court noted, in less colloquial terms, was: "once it's out, it's out." (*See* Opinion, November 4, 1993, p. 9). The property interest is lost regardless of the nature of the disclosure or the nature of the recipient.

*Ruckelshaus* continues:

> The economic value of that property right lies in the competitive advantage over others that [defendant] enjoys by virtue of exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge.

*Id.*, at 1012, 104 S.Ct. at 2877. Such is the case alleged at bar. Moreover, the Court notes that, like the contract in the case at bar, the Supreme Court did not limit the infringement to "disclosure *to* or use *by competitors*" in its analysis of the harm involved.

Accordingly, while the Court again acknowledges that the plaintiff must show a *disclosure which violates a valid contract*,[2] and *damages arising therefrom*, such an injury is no less irreparable now than it was November 4, 1993. Therefore the Court's evaluation of this factor is not altered by the instant motion.

#### C. The Possibility of Substantial Harm to Others

The Court originally tailored the PI to protect the rights of litigants in the *Ford* litigation, which was pending in the Georgia state court at the time. Since the issuance of the PI on November 4, 1993, in fact, since this Court's March 16, 1994, Opinion and Order finding defendant in contempt, a jury verdict has been returned in the Georgia state court in favor of the *Ford* plaintiffs.

While this Court was originally concerned about the possible prejudice to the plaintiffs in the Georgia cases, the issue has now become moot, and cannot affect this determination.

#### D. Public Interest

Following an examination of what the Court interpreted as the choice "between the possible punitive operation" of a Preliminary Injunction, and the "protection of a recognized legal right," Opinion, November 4, 1993, p. 10 (*citing Basicomputer v. Scott*, 791 F.Supp. 1280, 1294 (N.D.Ohio 1991), *aff'd* 973 F.2d 507 (6th Cir.1992)), the Court determined that "the public interest can be served by the issuance of a preliminary injunction." *Id.*

The same rationale is currently applicable. Accordingly, analysis of this factor remains in favor of issuance of the PI, and does not affect the instant determination.

### IV. INJUNCTION

Following a review of the four factors relevant to the determination of the propriety of the issuance of a Preliminary Injunction, it is the determination of this Court that the Injunction issued November 4, 1993, as modified by this Court's Opinion of March 16, 1994, shall remain in effect.

A review of the factors has indicated that the possibility of irreparable harm, as well as the possibility of success on the merits, continue to warrant such an Injunction.

### III. CONCLUSION

Upon review of the briefs and exhibits submitted, and for the reasons stated herein, the Court finds that the continuation of the Preliminary Injunction currently in place is appropriate.

---

**2.** Not necessarily, as defendant would have it, a disclosure directly to a competitor.

Accordingly, defendant's Motion to Dissolve the Preliminary Injunction is DENIED.

IT IS SO ORDERED.