Stile Software v. Mills          CV-98-327-SD   07/16/98

UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE


Stile Software, Inc.

_____v.                              Civil No. 98-327-SD

Charles A. Mills;
Firesign Computer Company;
Allen Systems Group, Inc.


                        O R D E R


     The source of this litigation is a dispute over a contract

to distribute computer software.  Following hearing, the matter

is before the court on plaintiff's motion for a preliminary

injunction.[1]


1.  Background

     Plaintiff Stile Software, Inc. (Stile) is a New Hampshire

corporation with a principal place of business in Orford, New

Hampshire.  Paul Boone is the president and principal of Stile.

     Defendant Charles A. Mills is a resident of San Francisco,

California.  Defendant Firesign Computer Corporation (Firesign)

is a California corporation with a principal place of business in

_____

     [1]Plaintiff moved for a temporary restraining order, but the
court directed that a hearing be held on a preliminary
injunction.  Due to time constraints, the parties were largely
limited at such hearing to proceeding by offers of proof.  The
court has accepted, for the purposes only of the preliminary
injunction proceedings, plaintiff's representation that it
possesses jurisdiction over all named defendants.  Defendants
have, of course, reserved their right to contest such
jurisdiction in the future.

San Francisco.[2]  Defendant Allen Systems Group, Inc. (ASG) is a Delaware corporation with a principal place of business in Naples, Florida.

On January 26, 1991, Stile and Mills (who was then a sole proprietor doing business as Firesign Computer Company) executed a distributorship agreement which granted Stile the Northeast distributorships for the "Outbound" computer programs developed by Mills.  Plaintiff's Exhibit 1.  By "Addendum" of April 18, 1994, this agreement was reconfirmed as between Stile and Firesign.  Plaintiff's Exhibit 2.[3]

Apparently, business dealings among the parties ran smoothly until November 1997, when Mills advised Boone that Firesign was unhappy with Stile's distributorship efforts.  Plaintiff's Exhibit 4.  Stile was informed that Firesign did not interpret the 1991 agreement as amended as inclusive of newly developed computer program features or platforms or new software.  Id. Firesign contended that it had "waived" the "Product" definition of the agreement in the past, but that it would require new agreements covering computer program enhancements in the future. Id.[4]

---

[2]Defendants have represented that Firesign has been liquidated prior to the commencement of the preliminary injunction hearing.  The court accepts that representation for the purpose of these proceedings.

[3]Mills assigned his right, obligations, and duties under the distributorship agreement to Firesign on or about September 1, 1992.  Plaintiff's Exhibit 2.

[4]Although the distributorship agreement of January 26, 1991, defines the "Work" involved as a "computer program and related

Further negotiations among the parties led to a proposal that Firesign buy out Stile's distribution rights. While Stile believed these negotiations were being finalized, ASG was acquiring Firesign.

ASG subsequently advised Stile that its distributorship agreement had been canceled. It offered to enter into a new distribution agreement with Stile, which Stile found to be unsatisfactory. Contacts have been made by defendants directly with Stile's customers, indicating to said customers that Stile no longer represents the product, and Stile has accordingly commenced this litigation.

## 2. Discussion

In the First Circuit, there exist four well-established criteria for the granting of preliminary injunctive relief: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of hardships; and (4) the effect (if any) of the court's ruling on

_____

documentation described in the specifications dated June 8, 1990," Plaintiff's Exhibit 1, § 1.1, it describes "Product" as "any portion or combination of computer code and user documentation which is based on the Work. Product will consist primarily of object code and user documentation but may, at the discretion of [Mills], include portions of source code and development document which are necessary and desirable to increase the marketability of the Product." Id. § 1.2. Additionally, Mills agreed "to modify and enhance the Product from time to time so as to insure its continued viability in the Mainframe Software Market, insofar as that is possible."
One may reasonably ask whether this language does not include enhancements to and modifications of the product, but that question does not require any answer by this court at this stage of the proceedings.

the public interest. <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996) (citations omitted). Of these four factors, likelihood of success is the "main bearing wall," <u>id.</u> at 16, having in mind that this court "need not predict the eventual outcome on the merits with absolute assurance." <u>Id.</u>

The agreement provides that so long as Stile meets its sales quotas of $90,000 per quarter, it will be entitled to continue performance thereunder. Plaintiff's Exhibit 1, § 19.3(a). There has been no claim made that Stile ever failed to comply with these requirements, or indeed with any other term or condition of the agreement.[5] The court finds that there is a likelihood of success on the merits for breach of the distributorship agreement as against at least one of the named defendants.[6]

The factor of irreparable harm is also, the court finds, here established. It is clear that a plaintiff "need not demonstrate that the denial of injunctive relief will be fatal to its business . . . [as] it is usually enough if the plaintiff shows that its legal remedies are inadequate." <u>Ross-Simons</u>, <u>supra</u>, 102 F.3d at 18 (citations omitted). "If the plaintiff suffers a substantial injury that is not accurately measurable or

_____

[5]Indeed, the thrust of the November 1997 complaint of Mills appears to be the failure to Stile to perform at the higher rate at which it has performed in earlier years.

[6]ASG may or may not ultimately be found legally at fault on a theory of successor liability. For the purpose of these preliminary injunction proceedings, however, the court finds it unnecessary to attempt to resolve this issue.

4

adequately compensable by money damages, irreparable harm is a natural sequel." Id. at 19 (citations omitted).

Furthermore, the law is clear that, by its very nature, injury to good will and reputation is not easily measured or fully compensable in damages, and accordingly is often held to be irreparable. See Ross-Simons, supra, 102 F.3d at 20 (and cases cited); Iowa Utilities Bd. v. Federal Communications Comm'n, 109 F.3d 418, 426 (8th Cir. 1996); Tom Doherty Assoc., Inc. v. Sabin Entertainment, Inc., 60 F.3d 27, 37-39 (2d Cir. 1995); BasiComputer Corp. v. Scott, 973 F.2d 507, 511-12 (6th Cir. 1992). As Stile is here threatened with a loss of all customers for the Outbound program, the court finds that it has established the factor of irreparable harm.

The balance of hardships is also in favor of Stile, as the defendants will retain some 60 percent of the market for the Outbound program, and the court finds that there is no adverse public interest which will be affected by the granting of a preliminary injunction.

This brings into play the requirement of Rule 65(c), Fed. R. Civ. P., that plaintiff provide security.[7] Addressed to the

---

[7]Rule 65(c), Fed. R. Civ. P., provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

5

discretion of the court, the purpose of such security is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined. 13 MOORE'S FEDERAL PRACTICE § 65.50[1], at 65-92; § 65.50[3], at 65-94, 95 (3d ed. Matthew Bender 1997).

Defendants argue that a bond in the amount of $300,000 should be required, but the court finds that, given the right of defendants to terminate the distributorship on failure of plaintiff to meet his quarterly sales quota of $90,000, that sum, $90,000, is the proper and sufficient amount of security to be required. Accordingly, entry of the preliminary injunction will be conditioned on the furnishing of a $90,000 security bond by Stile.

## 3. Conclusion

For the reasons outlined, the court has granted plaintiff Stile a preliminary injunction as against the defendants Mills and Allen Systems Group. The entry and effectiveness of this injunction is conditioned on a security bond in the amount of $90,000.

SO ORDERED.

---

Shane Devine, Senior Judge
United States District Court

July 16, 1998

cc:   Thomas J. Donovan, Esq.
      W. Wright Danenbarger, Esq.

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Stile Software, Inc.

_____v.                                Civil No. 98-327-SD

Charles A. Mills;
Firesign Computer Company;
Allen Systems Group, Inc.


ORDER OF INJUNCTION


Following hearing on a preliminary injunction, the court finds and rules that plaintiff Stile Software, Inc., is entitled to such preliminary injunction as against the defendants Charles A. Mills and Allen Systems Group, Inc., and accordingly said defendants and their agents, servants, and employees are enjoined from contacting (a) existing Outbound clients of Stile Software, Inc., or (b) potential clients of Stile Software, Inc., within the territory as defined in the distribution agreement of 1991 and any amendments thereto, except that defendants may have routine technical support and maintenance contacts with said existing or potential clients so long as no reference is made as to any post-June 30, 1998, change in invoicing or in the role of Stile Software, Inc.  Defendants are further here enjoined from collecting or attempting to collect any payments from existing or potential Outbound customers which would in the ordinary course have been paid to Stile.

Defendants are ordered to perform pursuant to the 1991 distribution agreement and 1994 addendum thereto pending further order of this court.

This preliminary injunction becomes effective only on the furnishing of security in the amount of ninety thousand dollars ($90,000) by plaintiff Stile.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

July 16, 1998

cc: Thomas J. Donovan, Esq.
W. Wright Danenbarger, Esq.