**HENKEL CORPORATION, Plaintiff,**

v.

**Charles K. COX and Chemtool Incorporated, Defendant.**

No. CIV 05–70395.

United States District Court,
E.D. Michigan,
Southern Division.

March 23, 2005.

Charles C. DeWitt, Jr., DeWitt, Balke, Detroit, MI, for Plaintiff.

Allan J. Sternstein, Bradley G. Lane, Brinks, Hofer, Chicago, IL, James K. Cleland, Jon H. Beaupre, Brinks, Hofer Ann Arbor, MI, Todd R. Mendel, Barris, Sott, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

**OPINION DETAILING FINDINGS OF FACT AND CONCLUSIONS OF LAW WHICH SUPPORT THE ORDER OF A PRELIMINARY INJUNCTION**

On March 15–17, 2005, this Court held an evidentiary hearing on the motion for a preliminary injunction brought by Plaintiff Henkel Corporation (Henkel). On March 17, this Court issued a preliminary injunction forbidding, for the duration of this suit, use of the alleged trade secrets by Defendant Chemtool Inc. (Chemtool) and Defendant Charles Cox. (Order Granting Preliminary Injunction, March 17, 2005; Corrected Order, March 21, 2005.) It also limited the scope and location of Defendant Cox's employment responsibilities at Chemtool for that period and restricted Cox from contacting some customers and colleagues. It forbade Cox from accessing the Chemtool internal network and forbade any employee of Chemtool who had access to the alleged trade secrets from contacting customers about products that compete with Plaintiff; and finally, as an enforcement mechanism, provided for regular imaging of computers and electronic media of some Chemtool employees, including Cox. (*Id.*) No bond was required from Plaintiff.

I write now to explain the findings of fact and conclusions of law supporting this injunction and my decision on bond.

## FINDINGS OF FACT

### I. The Parties

1. Henkel is a Delaware corporation with its principal place of business in Gulph Mills, Pennsylvania. It produces a variety of products, including lubricants, coolants, and cleaners used in the production of beverage and food cans. (Complaint ¶ 1, admitted in Cox's Verified Answer and Chemtool's Answer.)

2. Cox, who once worked at Henkel and is now employed by Chemtool, resides in Macornb Township, within the Eastern District of Michigan. (Complaint ¶ 2, admitted in Cox's Verified Answer.)

3. Chemtool is a Illinois corporation, and has offices in Crystal Lake, Illinois as well as Elkhorn, Wisconsin. (Complaint ¶ 3, admitted in Chemtool's Answer; Testimony of James Athens, Mar. 17, 2005.)

### II. The Cause of Action and Procedural Posture of the Case

4. Henkel's suit has four counts: one against Cox, one against Chemtool, and two against both Defendants. Henkel sues Cox for a breach of employee agreement, Chemtool for tortious interference with contractual relations, and both for

misappropriation of trade secrets and unfair competition. All these counts are brought under Michigan law, with the exception of the trade secrets count, which is brought under both Michigan and Illinois law.

5. Concurrent with the filing of its Complaint, Henkel moved for a temporary restraining order and preliminary injunction that would "prevent the harm [the] misappropriation by Cox and Chemtool would cause to Henkel's competitive position in the marketplace." (Br. in Support of the Motion for a Prelim. Inj., 2.)

6. On February 2, 2005, this Court ordered temporary restraint. Later, with the agreement of both parties on several occasions, this Court continued the Temporary Restraining Order until March 17, 2005, when the hearing on Plaintiff's Motion for a Preliminary Injunction concluded.

### III. Employment Agreement

7. In January of 1997, Defendant Cox signed an employment agreement with Plaintiff as a condition of his employment. That agreement contained several provisions forbidding disclosure to unauthorized parties of information not generally available to the public, including information about products and manufacturing costs. (Agreement ¶ 2.)

8. The agreement provided that Cox would "make no use of any such information [ . . . ] except such use as is required in the performance of my duties for the Company [Henkel]." (*Id.* at ¶ 2(c)).

9. The agreement further provided that upon termination of employment, all materials, including specifically formulas and data, would be the sole property of the Company [Henkel] and would be delivered to Henkel by Cox. (*Id.* at ¶ 2(d)).

10. The agreement has no non-compete clause that would impose conditions on the future employment of Cox after termination of employment with Henkel.

### IV. Cox's Departure from Henkel and Arrival at Chemtool

11. On January 3, 2005, Cox informed his immediate supervisor at Henkel that be planned to resign from his employment at the end of the month.

12. On Friday, January 21, 2005, Cox had a meeting with superiors at Henkel. The outcome of the meeting was that Cox was asked to leave Henkel immediately, and his employment with Henkel ceased on that date.

13. On February 1, 2005, Cox began his employment with Chemtool.

### V. Evidence Regarding Alleged Trade Secrets

14. At the hearing on March 15, 2005, Plaintiff indicated that it planned to present evidence of the theft of more than a thousand trade secrets in support of its Motion for a Preliminary Injunction. At the continuation of the hearing on March 16, 2005, I indicated that I felt a preliminary injunction could be supported by evidence of theft of two alleged trade secrets, one within the aluminum can lubricant business and one outside the aluminum can lubricant business, and thus I would only take evidence on two secrets of Plaintiff's choosing.

*A. Alleged Trade Secret Involving Aluminum Can Business*

15. Plaintiff's Exhibit 8, Lines 73 to 95, columns C and D, are titled "Henkel" and contain the ingredient list and percentages of those agreements in "Postlube", a lubricant used in the manufacture of aluminum cans that Henkel plans to sell to customers, but which has not yet released.

16. Plaintiff's Exhibit 8, Lines 73 to 95, columns E and F contains a corresponding set of ingredients and their percentages, marked "CT," for Chemtool.

17. That document states that "We are starting to develop our own aluminum can bodymaker formulac. This is the first iteration."

18. Cox admitted he created the file on his Chemtool laptop.

19. Cox admitted that the "Postlube" formula represented in lines 73 to 95 was a direct copy of Henkel's formula, and that he was using it to create his own formula.

20. At Henkel, the Postlube formula was stored in a password-protected database at Henkel, where access was closely monitored and restricted.

*B. Alleged Trade Secret Outside the Aluminum Can Business*

21. Plaintiff's Exhibit 6 is a list of files found in a pen drive (a portable electronic device that stores computer files) belonging to Defendant Cox.

22. Plaintiff selected the file mentioned on line 141 (File 141) of Exhibit 6, ESCA 93–4, as the trade secret unrelated to the aluminum can business.

23. File 141 of Exhibit 6 is a surface analysis of the film left on metal coils after treatment with a Henkel corrosion-preventative pretreatment chemical mix.

24. Henkel's Technical Director, Andrew Hatch, characterized the analysis contained in File 141 as proprietary, and the analysis was stored in a password-protected database, where access was closely monitored and restricted.

## VI. Evidence of Misappropriation of Aluminum Can Alleged Trade Secret

25. Cox admitted he was using a copy of Henkel's Postlube formula to create his own formula after he began work at Chem-

tool, and that he was doing so on his Chemtool computer.

26. Cox said Exhibit 8 was not a file on the three CDs he gave to a Chemtool vice-president, Stragus, but he also stated that he did not know the content of those CDs. He also said he never knowingly sent or gave the file to anyone else at Chemtool, but would not rule out the possibility that he sent or gave the file to another person at Chemtool in error.

## VII. Evidence of Misappropriation of File 141

27. Cox bought the pen drive while he was employed with Henkel and used it in his work there.

28. Cox stated he downloaded File 141 after a colleague at Henkel asked him to take a look at it, and loaded it on his pen drive for the purpose of returning it to her.

29. Cox kept the pen drive after he left his employment with Henkel and used it after he began work for Chemtool.

30. Cox says he never knowingly gave the file to anyone at Chemtool, but would not rule out having done so accidentally as part of a package of files or a single big file.

31. Cox also admitted that he had plugged the pen drive into a Chemtool machine.

32. File 141 was last accessed and/or duplicated on December 26, 2004.

33. Cox created at least one CD on his home machine on December 26, 2004.

34. Cox stated that after he began work at Chemtool in February of 2005, he gave three CD ROMs to a vice president at Chemtool,[1] but said he didn't know the

---

1. Cox admitted this in his sworn testimony before this Court, on which I have chosen to rely, because I found it more credible than earlier sworn statements by Cox that stated

the contrary. Cox stated that he had returned all CDs and other electronic files to Henkel in his sworn deposition (Def.'s Joint Opposition, Ex. 4 at 149–50), and in his brief to this

complete contents of those CDs. He then stated that he believed the CDs contained training materials.

## CONCLUSIONS OF LAW

1. This court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 and personal jurisdiction over both defendants.

### I. Preliminary Injunction Standard

■ 2. Courts must balance four elements when considering granting injunctive relief: (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of equities; and (4) the public interest. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992).

3. Courts will not normally grant injunctive relief unless both the likelihood of success on the merits and irreparable harm prongs weigh in favor of relief. *See, e.g.,* 13 *Moore's Federal Practice* § 65.06[1] and [2] (Matthew Bender 3d. ed.).

### II. Plaintiff Has Demonstrated a Likelihood of Success on the Merits

■ 4. Plaintiff has demonstrated a likelihood of success on the merits of the trade secret claim by demonstrating a likelihood of success on three prongs: (1) the existence of a trade secret, (2) acquisition of the trade secret in confidence; and (3) unauthorized use or disclosure. *Aerospace Am., Inc. v. Abatement Techs., Inc.,* 738 F.Supp. 1061, 1069 (E.D.Mich.1990), citing *Kearns v. Ford Motor Co.,* 203 U.S.P.Q. 884, 888 (E.D.Mich.1978). This conclusion of law rests on the following conclusions of law below.

■ 5. Under Michigan law, a court may enjoin actual or threatened misappropriation of a trade secret and may compel affirmative acts to protect a trade secret. M.C.L. § 445.1903.

*A. Plaintiff will likely succeed in demonstrating that both alleged trade secrets were of the type to qualify as trade secrets under Michigan law.*

■ 6. Under Michigan law, a trade secret "means information, including a formula, pattern, compilation, program, device, method, technique, or process," that (1) derives independent economic value from not being generally known to or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use, and (2) is the subject of reasonable efforts to maintain its secrecy. M.C.L. § 445.1902.

7. The formula for Postlube is a formula for a Henkel product. Therefore, I find Plaintiff is likely to succeed in demonstrating that it is information that can qualify as a trade secret.

8. The formula for Postlube was not generally known or ascertainable, as the product had not yet been released. As the formula for an unreleased product, it has independent economic value.

9. The formula for Postlube was stored in a password-protected database at Henkel and employees were required to sign confidentiality agreements.

10. Plaintiff has demonstrated a likelihood of success on the merits as to the classification of the Postlube formula as a trade secret.

11. File 141 contained information that was developed by Henkel about the result of the process of application of one of its products. Therefore, I find Plaintiff is likely to succeed in demonstrating that it is

Court, Cox again stated that he returned all electronic files he had of Henkel's to Henkel before this lawsuit was ever filed. (Def.'s Joint Opposition at 11.)

information that can qualify as a trade secret.

12. File 141 contained an analysis conducted by Henkel of the use of a Henkel product that was in circulation. Plaintiff offered testimony that this analysis was proprietary and carried economic value for competitors.

13. Although Defendants offered evidence that companies, including Henkel, conduct analyses of other products on the market, Defendant did not offer any evidence that directly rebutted Plaintiff's testimony about the proprietary nature of the contents of File 141, the analysis of the film left on metal coils by the Henkel product. No evidence was introduced to indicate this information is generally known or readily ascertainable.

14. File 141 was stored in a password-protected database and employees were required to sign confidentiality agreements.

15. Plaintiff has demonstrated a likelihood of success on the merits as to the classification of File 141 as a trade secret.

*B. Plaintiff will likely succeed in demonstrating that there was actual or threatened misappropriation of both alleged trade secrets.*

16. Misappropriation has two definitions under Michigan law: (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another, without express or implied consent, by a person who knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident, mistake, improper means, or derived from or through a per-

son who owed a duty to maintain its secrecy. M.C.L. 445.1902(b).

17. Plaintiff has demonstrated a likelihood of success on the question of whether Defendant Cox knew or had reason to know that the Postlube formula and File 141 were trade secrets and that he had a duty not to disclose or use it. Evidence of Cox's confidentiality agreement with Henkel, as well as storage of both these files in a password-protected database, provide a basis for such knowledge.

18. Because of the nature of the Postlube formula, and the fact that Cox was a former employee of Henkel who owed a duty to maintain its secrecy, Plaintiff can show a likelihood that Chemtool knew or should have known that such information was acquired by improper means.

19. Cox used the Postlube formula in creation of a Chemtool formula while an employee of Chemtool. Plaintiff has demonstrated a likelihood of success in showing actual misappropriation by Cox of the Postlube formula.

20. Plaintiff has demonstrated a likelihood that there was a threatened [2] misappropriation of the Postlube formula by Chemtool, because Cox was using the secret in the creation of a Chemtool product.

21. Cox retained a copy of File 141 on his pen drive in violation of his confidentiality agreement with Henkel, and plugged that pen drive into his Chemtool laptop, so Plaintiff has demonstrated a likelihood of success on the question of whether Cox knew or should have known that his possession of it was improper.

22. Because Cox was a former employee of Henkel, and the file contained proprietary Henkel information, Plaintiff can

---

**2.** It is not necessary for me to decide whether Plaintiff has demonstrated a likelihood of success on the question of whether there was an actual misappropriation by Chemtool through the actions of its employee, Cox, because a threatened misappropriation can also be enjoined.

show a likelihood that Chemtool knew or should have known that such information was acquired by improper means.

23. Because Cox retained a copy of File 141 and admits using the pen drive on which the file was stored on his Chemtool laptop, Plaintiff has demonstrated a likelihood of success on the question of whether there was a threatened misappropriation of File 141 by both Cox and Chemtool.

### III. Plaintiff Has Demonstrated Irreparable Harm

24. "An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992).

25. Because there is evidence of both threatened and actual misappropriation of trade secrets, without injunctive relief, Henkel would likely suffer competitive losses and losses of customer goodwill as a result of Defendants' actions. Such losses are inherently difficult to calculate and are sufficient to support an injunction. 973 F.2d at 512. *See also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran,* 67 F.Supp.2d 764, 779 (E.D.Mich.1999).

### IV. Plaintiff Has Demonstrated the Balance of Harms Weighs in Its Favor

26. The terms of the injunction do not prohibit Cox from working for Chemtool without a reduction in salary; the only harm to him comes in the limited manner of not being able to expand on his areas of expertise for the length of the case.

27. The terms of the injunction do not prohibit Chemtool from entering any field of business, merely restraining Chemtool from the aid of a small set of employees (perhaps as few as two) in aiding particular business efforts in competition with Henkel and placing a slight limit on the use of computers for the time it takes to image them.

28. The disclosure of trade secrets could seriously harm Henkel's ability to compete in the marketplace with Chemtool.

29. Weighing these harms, the balance of harms weighs in favor of granting the injunction.

### V. Plaintiff Has Demonstrated Public Interest in the Injunction

30. Michigan law explicitly permits injunctions to issue in cases of threatened or actual misappropriation. M.C.L. § 445.1903. The public interests in protecting confidential information and in enforcing valid employment contracts and the non-confidentiality agreements within weigh in favor of issuing the preliminary injunction. *See, e.g., Superior Consulting Co., Inc. v. Walling,* 851 F.Supp. 839, 848 (E.D.Mich.1994).

### VI. No Bond Is Needed

31. Because the terms of the injunction do not prevent Cox from working for the same salary at Chemtool, no bond is needed to compensate Cox for the possibility of an erroneous injunction.

32. Because the terms of the injunction do not prevent Chemtool from engaging in any particular field of business (merely restricting the employees who may do contact certain customers, etc.), no bond is needed to compensate Chemtool for the possibility of an erroneous injunction.

### CONCLUSION

The preliminary injunction entered on March 17, 2004, as corrected on March 21, 2004, will stand for the reasons above.