**OMNIAMERICA GROUP, Plaintiff,**

v.

**STREET GOLD RECORDS, LTD., dba Canterbury Productions/Farag Music BMI, et al., Defendant.**

No. 1:96 CV 308.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 19, 1996.

Suzanne Bretz Blum, Elizabeth A. Costigan, Thompson, Hine & Flory, Cleveland, OH, for plaintiff.

Thomas L. Meros, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This action is before the Court on Plaintiff, OmniAmerica Group's (hereinafter "OmniAmerica") Motion for a Preliminary Injunction, pursuant to Fed.R.Civ.P. Rule 65(a), against Street Gold Records, Ltd. dba Canterbury Productions/Farag Music BMI et. al. (hereinafter "Canterbury Productions").

### STATEMENT OF THE CASE

OmniAmerica filed this three count Verified Complaint for Injunctive and Monetary Relief which was assigned to Judge Patricia Anne Gaughan on February 12, 1996.

Due to the unavailability of Judge Gaughan, pursuant to Local Rule 6:2.6, the Clerk of Court referred this matter to the undersigned as the United States District Judge on miscellaneous duty rotation.

OmniAmerica is a general partnership formed under the laws of the state of Massachusetts with its principal place of business at 200 Skylight Office Tower, 1660 West Second Street, Cleveland, Ohio 44113. OmniAmerica owns and operates several radio stations, including WMJI–FM, WMMS–FM, and WHK–AM. WMJI–FM is located at 105.7 on the FM dial and is known as "Majic 105.7".

Canterbury is a corporation formed under the laws of the state of Indiana with its principal place of business at 8001 Delaware Place, Marrillville, Indiana 46410. Canterbury is engaged in the business of promoting musical concerts and other types of events. It has been a promoter of concerts in the Cleveland, Ohio area. Henry Farag is the Incorporator and President of the corporation.

Independent Group Limited Partnership (hereinafter "IGLP") is a limited partnership formed under the laws of the state of Ohio with its principal place of business at One Radio Lane, Cleveland, Ohio 44114. IGLP owns and operates the radio stations WDOK–FM and WRMR–AM. These two radio stations compete with OmniAmerica's Cleveland stations for listeners.

The Moondog Coronation Ball Corp. is a corporation formed under the laws of the state of Ohio on March 6, 1995 by Mr. Henry Farag and Mr. Omar Farag. Its principal place of business is in Cleveland, Ohio.

Moondog Coronation Ball was the name of a concert organized by WJW radio when the legendary Alan Freed worked as a disc jockey for the station in 1952. According to OmniAmerica no other concert took place with the name Moondog Coronation Ball during the remainder of the 1950's, the 1960's, or the 1970's. John Gorman, while working as the business manager for WMMS in 1986, revived the use of Moondog Coronation Ball in connection with concerts that featured "oldies" rock and roll.

Malrite Communications Group, Inc. (hereinafter "Malrite"), the owners of WMMS at that time, registered the service mark "Moondog Coronation Ball II" with the Ohio Secretary of State on March 10, 1986. The service mark and its registration were acquired from Malrite by Shamrock Holdings, Inc. The assignment was recorded with the Ohio Secretary of State.

Shamrock Holdings, Inc. assigned the service mark and its registration to OmniAmerica's predecessor, Shamrock Broadcasting, Inc. The assignment was recorded with the Ohio Secretary of State. Shamrock Broadcasting, Inc. assigned its rights to OmniAmerica. The assignment was recorded with the Ohio Secretary of State.

WMJI–FM decided to sponsor another Moondog Coronation Ball in 1992 to commemorate the 40th anniversary of the original Moondog Coronation Ball. John Gorman, business manager for WMJI–FM, knew that WMJI–FM had worked with Canterbury in the last year to put on other concerts featuring "oldies" rock and roll and thought that Canterbury might be interested in producing the concert for WMJI–FM. Mr. Gor-

man informed Canterbury of WMJI–FM's intent to stage a concert called Moondog Coronation Ball on the 40th anniversary of the original event and faxed Mr. Farag information about the original event (according to both the testimony and the affidavit of John Gorman). Canterbury agreed to produce the concert for WMJI–FM, and the parties entered into a letter agreement.

WMJI–FM created posters, flyers, on-air promotional material, and other advertising for the 1992 Moondog Coronation Ball. The March 21, 1992 event was referred to interchangeably as "Majic's Moondog Coronation Ball," "Moondog Coronation Ball '92," "Majic Moondog Coronation Ball 1992," and "Moondog Coronation Ball." The central service mark used by OmniAmerica in all of these instances was Moondog Coronation Ball II.

The 1992 Moondog Coronation Ball was a popular success and OmniAmerica decided to make it an annual event. OmniAmerica continued to use the service mark to promote and identify the event. In 1993, 1994, and 1995, OmniAmerica continued to use Canterbury as the promotional company responsible for booking and paying the artists who preformed. OmniAmerica claimed it invested considerable on-air advertising time, advertising dollars and staff effort to insure the success of the Moondog Coronation Ball. OmniAmerica and Canterbury entered into letter agreements very similar to the agreement in 1992 each year.

OmniAmerica claimed, through its radio station WMJI–FM, they reaped the reward of goodwill generated by the positive public association of the Moondog Coronation Ball as a WMJI–FM event. OmniAmerica further claimed that Canterbury understood and agreed that WMJI–FM should be the entity that the public associated with the service mark. OmniAmerica alleges that they always maintained control and supervision over the use of the service mark in connection with these concerts.

OmniAmerica further alleges that Canterbury developed a scheme over the years in which it planned to misappropriate the service mark from OmniAmerica and use it for its own purposes. OmniAmerica claimed that Canterbury saw the value of the service mark as it worked with OmniAmerica to produce concerts. On March 6, 1995, without informing OmniAmerica, Canterbury incorporated Moondog Coronation Ball as part of its plan to take the service mark from OmniAmerica.

Further, Canterbury and Moondog Coronation Ball Corp. have planned a concert to take place March 23, 1996 at the Cleveland State University Convocation Center. Canterbury and Moondog Coronation Ball Corp. are organizing the March 23, 1996 concert in association with IGLP through IGLP's stations WDOK–FM and WRMR–AM.

OmniAmerica further claims that Canterbury, Moondog Coronation Ball Corp., and IGLP are unlawfully using the service mark to promote their "oldies" concert scheduled for March 23, 1996. OmniAmerica has never authorized Canterbury, Moondog Coronation Ball Corp., or IGLP to use the Mark without OmniAmerica exercising control and supervision over the use of the service mark.

On January 31, 1996 Dean Thacker, General Manager for OmniAmerica's Cleveland Stations, received a facsimile from Henry Farag, as a representative of Canterbury. The letter stated that Canterbury was promoting a concert with Cleveland WDOK and was calling the concert the "Moondog Coronation Ball" (according to both exhibit # 1 attached to the complaint and testimony of Mr. Thacker). In response to this facsimile, Mr. Thacker called Henry Farag and advised him that Canterbury's use of Moondog Coronation Ball was an infringement of a service mark owned by OmniAmerica (according to both the testimony and affidavit of Mr. Thacker). OmniAmerica sent a cease and desist letter by certified mail to both Canterbury and WDOK–FM advising them that their use of Moondog Coronation Ball in connection with a concert in Cleveland infringed OmniAmerica's rights in the service mark (according to both the Exhibit K attached to the verified complaint and testimony of Mr. Thacker).

OmniAmerica alleges that Canterbury, Moondog Coronation Corp., and IGLP mailed a postcard advertising their upcoming March 23, 1996 concert and are unlawfully

using their service mark to identify the concert they are promoting. The postcard states that tickets for the Moondog Coronation Ball may be purchased on February 15 and 16, 1996 (according to both Exhibit L of the verified complaint and Exhibit L marked and admitted in the Preliminary Injunction hearing). Tickets will be available to the general public on February 17, 1996.

OmniAmerica further claims that WMJI–FM has received numerous calls from listeners who have questions about the details of the upcoming concert. OmniAmerica states Defendants unauthorized use of the service mark is causing confusion and listeners have assumed that OmniAmerica stations are hosting the event and have called for information. Similarly, OmniAmerica claims that people will assume that OmniAmerica's WMJI–FM is responsible for the concert, when OmniAmerica has in fact no control over the quality of the concert event planned by the Defendants. OmniAmerica claims that the reputation of OmniAmerica's WMJI–FM has been harmed and is threatened with further irreparable harm if the defendants are not immediately restrained from using the service mark.

OmniAmerica claims that the people associated a particular quality, attitude, and atmosphere with the concerts promoted by OmniAmerica in connection with the service mark. Without OmniAmerica's involvement in the upcoming concert, the quality, attitude, and atmosphere will necessarily be different and the positive expectations that OmniAmerica has developed with concert goers over time with the use of the service mark will be irrevocably lost.

OmniAmerica claims in Count One, the use of the service mark in connection with a concert is likely to cause confusion or mistake as to sponsorship of their concert, constituting a false description or representation under Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a).

Further, OmniAmerica claims in Count Two, the use of Moondog Coronation Ball is identical to its service mark and as such is likely to cause confusion as to the origin, source, and sponsorship of the concert being promoted by the Defendants. OmniAmerica

states that the unauthorized use of the service mark constitutes an infringement of OmniAmerica's common law rights in the service mark.

Finally, OmniAmerica claims the use of the service mark by the Defendants constitutes a violation of Ohio Revised Code Section 4165.02, Ohio Deceptive Trade Practices.

On February 14, 1996, this Court held two status conferences regarding OmniAmerica's Application for a Temporary Restraining Order. At the first status conference, held at 9:00 a.m., counsel presented arguments in support of and in opposition to Plaintiff, OmniAmerica's Application for a Temporary Restraining Order. The Court informed all parties to return back to the Court at 4:00 p.m. for another status conference. At the second status conference, all counsel were present. The Court entertained more arguments in support of and in opposition to OmniAmerica's Application for a Temporary Restraining Order. The Court granted OmniAmerica's Application for a Temporary Restraining Order. The Temporary Restraining Order restrained Defendants from using the name Moondog Coronation Ball or any similar service mark in connection with any concert or event. Specifically, Defendants are enjoined from:

1) selling, issuing or releasing any tickets bearing the service mark Moondog Coronation Ball or any similar service mark;

2) issuing any written or oral promotion of the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, using the service mark Moondog Coronation Ball or any similar service mark;

3) making any representations that the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, is the Moondog Coronation Ball.

The Court further ordered that OmniAmerica give security in the amount of $20,-000.00 for payment of such costs and damages incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The Court further ordered that OmniAmerica's Motion for a Preliminary Injunction hearing was set for February 15, 1996 at 9:00 a.m.

On February 15, 1996, this Court held a hearing on Plaintiff, OmniAmerica's Application for a Preliminary Injunction. OmniAmerica called the following witnesses: 1) Dennis Thacker; 2) John Gorman; 3) Chrisia Levers. Plaintiff, OmniAmerica rested. Defendant, Canterbury called the following witnesses: 1) Henry Farag; 2) Thornton J. Hudson; 3) Marlene Daniel; 4) P. Jay McKinney; 5) Donna Jean Vaccariello; 6) Jack Boessneck; 7) Omar Farag; and, recalled as a witness, Henry Farag. Defendants, then rested. The Court concluded the hearing and requested the parties submit post hearing briefs to the Court by February 16, 1996 at 4:00 p.m. The Court indicated that a ruling would be issued on the first day of Court business following the receipt of the briefs.

The Court has received both Plaintiff and Defendants' Post Hearing briefs. In the briefs, the Court specifically requested both parties to address the significance of the OmniAmerica's service mark for "Moondog Coronation Ball II." Plaintiff claims that this service mark, which was acquired when it purchased WMMS–FM from Shamrock Holdings, Inc. on or around June 30, 1993, establishes ownership of the words "Moondog Coronation Ball." Defendants claim the service mark is insignificant because the service mark was abandoned by WMMS–FM following its 1986 concert. To succeed in its lawsuit, OmniAmerica will need to prove that it has ownership of the words "Moondog Coronation Ball."

The Defendants in this case argue that neither party has a registered service mark in 1992 when the Moondog Coronation Ball was revived. Because neither party had a registered claim to the service mark, both parties have equal rights to the words "Moondog Coronation Ball." At the February 15, 1996 Preliminary Injunction hearing Defendants further argued that Moondog Coronation Ball is a part of the public domain. Therefore, the Defendants had a right equal to OmniAmerica to use the name Moondog Coronation Ball as a part of its March 23, 1996 "oldies" rock and roll concert. The present issue, however, before this Court is whether to issue a preliminary injunction. This Court must determine whether the elements of a preliminary injunction have been met.

## THE STANDARD FOR PRELIMINARY INJUNCTIONS

█ To determine whether a preliminary injunction is appropriate, the Court must consider four factors:

(1) whether the movant has shown a strong or substantial likelihood of success on the merits of the lawsuit;

(2) whether the movant has shown irreparable injury which it is suffering or will suffer if the preliminary injunction is not granted;

(3) whether the preliminary injunction will cause substantial harm to others; and

(4) whether the preliminary injunction is in the public's interest.

See, e.g., *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992); *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985); *In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985). "The standard for a preliminary injunction is flexible and the four factors are not prerequisites to be met but instead the Court must balance them." *Worthington Foods, Inc. v. Kellogg Co.,* 732 F.Supp. 1417, 1427 (S.D.Ohio 1990); Citing *Frisch's,* 759 F.2d at 1263; and *DeLorean,* 755 F.2d at 1229.

Furthermore, other courts have held that in cases filed under section 43(a) of the Lanham Act, "a movant may merit preliminary relief simply upon a showing of irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Worthington Foods, Inc.,* at 1428.

## LIKELIHOOD OF SUCCESS ON THE MERITS

In determining OmniAmerica's likelihood of success on the merits, the Court needs to determine *what* the Defendants allegedly infringed, and *how* they allegedly did it. OmniAmerica alleges that the Defendants infringed upon its service mark—"Moondog Coronation Ball II." This service mark was used in conjunction with a series of "oldies" rock and roll concerts sponsored by radio stations WMJI–FM and WMMS–FM. Both of these stations are owned by OmniAmerica.

OmniAmerica alleges that the Defendants have infringed upon its service mark by planning a concert called the "Moondog Coronation Ball." This concert is to take place on March 23, 1996.

■ In its complaint, OmniAmerica raises claims based on the Section 43(a) of the Lanham Act (15 U.S.C. § 1125[a] ), the Ohio Deceptive Trade Practices Act (O.R.C. 4165.02), and the Ohio common law. These three bodies of law are all interconnected. The Ohio Deceptive Trade Practices Act has codified the Ohio common law on trademarks. Likewise, the Ohio Deceptive Trade Practices Act is substantially similar to section 43(a) of the Lanham Act. *Worthington Foods, Inc.,* 732 F.Supp. at 1431. Accordingly, the theories of infringement actionable under the Lanham Act and the Ohio Deceptive Trade Practices Act are also actionable under the common law. *Id.*

■ Section 43(a) and the Ohio Deceptive Trade Practices Act both encompass the common law's "palming off" action. Palming off involves a junior user of a service mark attempting to trade on the goodwill associated with the senior user's service mark. *Worthington Foods, Inc.,* 732 F.Supp. at 1432. In order to show a likelihood of success on its claims, OmniAmerica must show that the Defendants use of the service mark will cause a likelihood of confusion.

■ In *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982), the court listed eight factors that are to be "balanced" in determining whether there is a likelihood of confusion. These factors are:

(1) the strength of the plaintiff's mark;

(2) relatedness of the goods;

(3) similarity of the marks;

(4) evidence of actual confusion;

(5) marketing channels used;

(6) likely degree of purchasing care;

(7) defendant's intent in selecting the mark;

(8) likelihood of expansion of the product lines.

See *Frisch's,* 670 F.2d at 648. "These factors 'imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Worthington Foods, Inc.,* 732 F.Supp. at 1433 (quoting *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir.1988)).

### Strength of the Plaintiff's Mark

■ As to the first factor, the strength of OmniAmerica's service mark, it appears that the service mark is strong. A service mark identifies and distinguishes the services of one person from the services of others. 15 U.S.C.A. § 1127 (West Supp. 1995). A service mark can be classified under four categories: (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, and (4) generic. *Worthington Foods, Inc.,* at 1432 and 1433; See also, *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 594 (6th Cir.1989) *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.,* 834 F.2d 568, 571. OmniAmerica claims that "Moondog Coronation Ball II" is a fanciful service mark.

■ A "fanciful" service mark is the strongest type of mark. *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.,* 834 F.2d at 571. Such a service mark signifies nothing other than the product or service for which the mark has been assigned. *Id.* "Encroachment on a strong mark tends to produce the greatest likelihood of confusion." *Id.*

In the present case, OmniAmerica appears correct in its assertion that "Moondog Coronation Ball II" is a fanciful service mark and

worthy of the strongest protection. The combination of the words "Moondog," "Coronation" and "Ball" when strung together are a fanciful mark. These words signify only the service for which they were assigned. It was established at the February 15, 1996 hearing that the words "Moondog Coronation Ball" signify nothing other than the service for which it has been assigned. Based on the testimony of defense witnesses, P. Jay McKinney and Donna Jean Vaccariello, the words "Moondog Coronation Ball" are synonymous with an "oldies" rock and roll concert.

### Similarity of the Mark

The service mark that has been registered by OmniAmerica is "Moondog Coronation Ball II." The Defendants intend to use the words "Moondog Coronation Ball" with their March 23, 1996 concert. Clearly, the similarity between OmniAmerica's registered service mark and the name of the Defendants March 23, 1996 concert is highly similar. This similarity will no doubt cause confusion in the general public as to which concert is the "real" Moondog Coronation Ball.

### Evidence of Actual Confusion

Another factor that is of relevance is "the evidence of actual confusion." In the present case, OmniAmerica has presented evidence of actual confusion that has resulted from the Defendant's use of the term "Moondog Coronation Ball." OmniAmerica has kept a log of radio listeners who have called WMJI out of confusion as to what is the "real" "Moondog Coronation Ball." (according to Exhibit Q that was marked and admitted at the Preliminary Injunction Hearing). WMJI has also received letters and facsimiles from confused listeners regarding the "Moondog Coronation Ball." (according to Exhibits I, Y and Z that were marked and admitted at the Preliminary Injunction Hearing). Thus, "actual confusion" has been shown to exist in this case.

### Marketing Channels Used

The Defendants have created confusion in the present case through the marketing channels that they have used to promote their March 23, 1996 concert. The previous Moondog Coronation Balls were all advertised and promoted through OmniAmerica's station WMJI-FM. In the present case, the Defendants are attempting to advertise and promote their March 23, 1996 concert through the radio stations WDOK-FM and WRMR-AM. Both are Cleveland radio stations. WDOK-FM has an "oldies" format similar that of WMJI. The Defendants use of these two marketing channels will only further the confusion that they have already initiated through using the words "Moondog Coronation Ball."

To reiterate, in order to show a strong or substantial likelihood of success on the merits of the lawsuit, OmniAmerica must show a likelihood of confusion. Because of the strength of its service mark, the similarity of the marks, evidence of actual confusion and the marketing channels used by the Defendants, OmniAmerica has shown a strong likelihood of success on the merits of its complaint.

This Court finds that the first element of "a substantial likelihood of success on the merits" has been established. Based on the strength of OmniAmerica's service mark and because actual confusion does exist in this case, OmniAmerica has presented serious arguments to the merits of its claim.

### IRREPARABLE INJURY

■ The second factor for the Court to consider in determining whether to issue injunctive relief is whether OmniAmerica will suffer irreparable harm. Harm is not irreparable if it is fully compensable. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511. "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Id.* at 512 (citing *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449).

■ In the present case, Mr. Thacker of OmniAmerica stated at the February 16, 1996 hearing that the Defendants use of "Moondog Coronation Ball" may result in damage to the goodwill that WMJI has established in holding the "Moondog Coronation Ball." Mr. Thacker explained that the concert is not intended to generate direct revenue for the radio station. It is intended to increase awareness of WMJI and create goodwill among listeners of "oldies" music.

This in turn sustains ratings which affects advertising revenue. Mr. Thacker stated that this indirect affect on the radio station can not be quantified. Along with being difficult to quantify, Mr. Thacker also stated that goodwill is both difficult to acquire and regain once it is lost. He explained that the goodwill that OmniAmerica has established from its previous "Moondog Coronation Balls" may be lost if the Defendants are permitted to use the "Moondog Coronation Ball" name. Mr. Thacker stated that the goodwill may be lost in two ways. One, the Defendants will capitalize on the goodwill already established by OmniAmerica. A second way in which the goodwill may be lost is if a poor concert is produced that will be associated with the Plaintiffs.

[10] Furthermore, if the court agrees with OmniAmerica that it can show a likelihood of success on the service mark claims which entail a finding of consumer confusion, the Court may presume irreparable injury. *Worthington Foods, Inc.*, 732 F.Supp. at 1460; *Central Benefits Mutual Ins. Co. v. Blue Cross and Blue Shield Ass'n*, 711 F.Supp. 1423, 1434 (S.D.Ohio 1989); *Wendy's Int'l Inc. v. Big Bite, Inc.*, 576 F.Supp. 816, 824 (S.D.Ohio 1983).

In this case, the Court has found that based on the strength of OmniAmerica's service mark and because of actual confusion, OmniAmerica has presented serious arguments to the merits of their case. Therefore, this Court finds that irreparable injury can result to OmniAmerica because the goodwill that it has established with their name "Moondog Coronation Ball" may be harmed and because OmniAmerica may succeed on the merits of its claim.

### HARM TO OTHERS

■ The third factor to consider when assessing a Motion for a Preliminary Injunction is the harm suffered by persons other than the Plaintiff. In the present case, the only significant harm suffered by others would be the harm suffered by the Defendants. The Defendants stand to lose profits and money expended on promotional materials and advertisements. These loses, however, are not entitled to consideration in as-

sessing the harm caused by an injunction. *Worthington Foods, Inc.*, 732 F.Supp. at 1461. "A party who willfully proceeds to expend funds on infringing activities cannot claim the loss of those funds as a ground for denying preliminary injunctive relief." *Id.*

Furthermore, the Defendants in the present case were on notice as to OmniAmerica's service mark for "Moondog Coronation Ball II." Defendants were notified by both Mr. Thacker of OmniAmerica and by OmniAmerica's counsel that OmniAmerica held a service mark for "Moondog Coronation Ball II."

Because the only harm to third parties will result to the Defendants and they proceeded to infringe OmniAmerica's service mark, even after being warned, this Court finds that the harm caused to others will not bar injunctive relief.

### THE PUBLIC INTEREST

■ The final factor to consider when assessing the desirability of injunctive relief is the public interest. In a case such as the present, public policy concerns weigh in favor of preliminary injunctive relief in order to halt confusion in the marketplace. *Worthington Foods, Inc.*, 732 F.Supp. at 1463. In the present case, confusion has been shown to exist regarding the Defendants' use of the words "Moondog Coronation Ball." OmniAmerica has logged numerous telephone calls from its radio listeners who are confused as to who is conducting the "Moondog Coronation Ball." (See Exhibit Q) It has also received letters and facsimiles from listeners who are confused as to who is conducting the "Moondog Coronation Ball." (See Exhibits I, Y and Z).

This Court finds that OmniAmerica has shown a likelihood of confusion. Thus, this Court finds that injunctive relief would be in the public's best interest.

The Court has adopted in part the Findings of Fact and Conclusions of Law submitted by Plaintiff.

### FINDINGS OF FACT

Plaintiff, OmniAmerica holds a certificate of registration for Moondog Coronation Ball II that was issued in 1986.

OmniAmerica acquired the registration for Moondog Coronation Ball II through assignment.

The first Moondog Coronation Ball was held in 1952 in Cleveland and is reputed to be the first rock and roll concert.

The name Moondog Coronation Ball was not used by anyone in connection with a concert or other event until 1986.

In 1986, the radio station WMMS–FM decided to hold a concert to rally support for bringing the Rock and Roll Hall of Fame to Cleveland.

John Gorman, who worked at WMMS–FM at that time, conceived the idea to call the concert the Moondog Coronation Ball and feature some performers from the oldies rock era.

WMMS–FM was owned by Malrite Communications in 1986 and that Malrite registered the name Moondog Coronation Ball II as a service Mark with the Ohio Secretary of State in order to protect their rights to the Mark.

WMMS–FM had plans to hold the next Moondog Coronation Ball when the Rock and Roll Hall of Fame was opened in Cleveland.

The next concert called the Moondog Coronation Ball was held on March 21, 1992. The concert was to commemorate the 40th anniversary of the original concert and was promoted through WMJI–FM.

Canterbury agreed to produce the concert for WMJI and the parties entered into a contract for the production of the Moondog Coronation Ball.

WMJI–FM promoted and hosted the concert. Canterbury contracted with the artist, sold tickets, and collected the proceeds from the tickets sales. Both WMJI–FM and Canterbury were active in choosing the talent for the show and deciding the logistics for the show.

WMJI–FM held the Moondog Coronation Ball again in 1993, 1994, and 1995. Canterbury was the production company each of those years.

WMJI–FM was using the Mark Moondog Coronation Ball with the consent and approval of the owner of the registration for the Mark.

OmniAmerica acquired WMJI–FM in 1994, around the same time that it acquired the assignment of the registration for the Mark.

In 1996, Canterbury knew that OmniAmerica owned the registration for Moondog Coronation Ball II.

Canterbury and WDOK–FM/WRMR–AM are using the service mark Moondog Coronation Ball in connection with an oldies concert scheduled to take place in Cleveland on March 23, 1996.

Numerous individuals have called WMJI–FM and expressed confusion over the origin and sponsorship of the concert scheduled for March 23, 1996.

## CONCLUSION

The Rights to the service mark are acquired through use. A registration is evidence that: the registrant had first use of the Mark; the registrant asserts exclusive rights to the service mark; and, the registrant has put the public on notice of its assertion of exclusive rights to the service mark. In the present case, OmniAmerica holds a fanciful service mark. This is a strong service mark. Encroachment on a strong service mark tends to produce the greatest likelihood of confusion. An intentional use of a fanciful service mark for an identical service in the same market area, combined with actual confusion, establishes likelihood of confusion.

In the case at bar, the likelihood of confusion with the service mark Moondog Coronation Ball may result in irreparable harm for purposes of entitlement to a Preliminary Injunction. The potential harm to the apparent infringer, the Defendants, does not weigh against the granting of injunctive relief. Further, the public interest is served by a Preliminary Injunction that prevents consumer confusion. By promoting a concert in Ohio using Moondog Coronation Ball, the Defendants have used Plaintiff's service mark without Plaintiff's permission in a way that is infringing Plaintiff's rights in the service mark. Therefore, OmniAmerica is entitled to a Preliminary Injunction.

IT IS THEREFORE ORDERED that the Defendants Street Gold Records, Ltd. dba Canterbury Productions/Farag Music BMI, the Moondog Coronation Ball Corp., and Independent Group Limited Partnership, there agents, and any other persons associated with or acting in concert with them, including but not limited to, Henry Farag and Canterbury Productions, Inc., be and hereby are restrained and enjoined from using the service mark "Moondog Coronation Ball" or any similar service mark in connection with any concert or other event. Use of a Mark that includes the words "Moondog" and "Coronation" in connection with a concert or other event will be considered to be use of a similar mark.

Specifically, Defendants, their agents, and any other persons associated with or acting in concert with them, including, but not limited to Mr. Henry Farag, Mr. Omar Farag, and Canterbury Productions, Inc. are enjoined from:

1) selling, issuing, or releasing any tickets bearing the service mark Moondog Coronation Ball or any similar mark;

2) issuing any written or oral promotion of the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, using the service mark Moondog Coronation Ball or any similar service mark;

3) making any representations that the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, is the Moondog Coronation Ball.

## CONCLUSION

Based upon the forgoing reasons, Plaintiff, OmniAmerica's Motion for a Preliminary Injunction is **GRANTED.** All matters pertaining to damages, and any issues relating to the expiration of the service mark that expires on March 10, 1996, will be addressed at the Permanent Injunction Hearing which will be held at a later date to be determined by this Court.

**IT IS SO ORDERED.**

## ORDER

It is ordered that the Defendants Street Gold Records, Ltd. dba Canterbury Productions/Farag Music BMI, the Moondog Coronation Ball Corp., and Independent Group Limited Partnership, there agents, and any other persons associated with or acting in concert with them, including but not limited to, Henry Farag and Canterbury Productions, Inc., be and hereby are restrained and enjoined from using the service mark "Moondog Coronation Ball" or any similar service mark in connection with any concert or other event. Use of a Mark that includes the words "Moondog" and "Coronation" in connection with a concert or other event will be considered to be use of a similar mark.

Specifically, Defendants, their agents, and any other persons associated with or acting in concert with them, including, but not limited to Mr. Henry Farag, Mr. Omar Farag, and Canterbury Productions, Inc. are enjoined from:

1) selling, issuing, or releasing any tickets bearing the service mark Moondog Coronation Ball or any similar mark;

2) issuing any written or oral promotion of the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, using the service mark Moondog Coronation Ball or any similar service mark;

3) making any representations that the concert scheduled for March 23, 1996, or any other concert or event produced by Defendants, is the Moondog Coronation Ball.

IT IS SO ORDERED.