Lance **FREED, et al., Plaintiffs,**

v.

Henry **FARAG, et al., Defendants.**

**No. 1:96 CV 2192.**

United States District Court, N.D. Ohio, Eastern Division.

Dec. 8, 1997.

---

Lisa D. Summers, Painesville, OH, for Lance Freed, Alana Freed, Alan Freed, Jr., Sieglinde Freed, Inga Freed Masken.

Thomas L. Meros, Cleveland, OH, for Henry Farag, Omar Farag, Street Gold Records, Ltd., Moondog Coronation Ball Corp.

James B. Niehaus, Elizabeth B. Wright, Suzanne Bretz Blum, Elizabeth A. Costigan, Thompson, Hine & Flory, Cleveland, OH, for Dean Thacker, OmniAmerica Group.

Suzanne Bretz Blum, Thompson, Hine & Flory, Cleveland, OH, for WMMS 100.7 FM Radio Station, WHK 1420 FM Radio Station.

Hugh M. Stanley, Jr., Arter & Hadden, Cleveland, OH, James B. Niehaus, Suzanne Bretz Blum, Thompson, Hine & Flory, Cleveland, OH, for Nationwide Communications Corp.

## MEMORANDUM DECISION ON SUMMARY JUDGMENT

GWIN, District Judge.

On July 10, 1997, Defendants OmniAmerica Group and Dean Thacker moved this Court for summary judgment [Doc. 42].

OmniAmerica and Thacker say they are entitled to summary judgment because the Freed family does not own the service mark to "Moondog Coronation Ball,"[1] and they are entitled to judgment in their favor on all claims stated by the plaintiffs.

On September 24, 1997, Defendant OmniAmerica Group and Third–Party Defendant Nationwide Communications Inc.[2] filed a motion for summary judgment [Doc. 48] as to the amended cross-claim[3] made by Defendants and Cross–Claimants Henry Farag, Omar Farag, Street Gold Records, Ltd., Canterbury Productions/Farag, and Moondog Coronation Ball Corp. (collectively "Defendants Farag").[4] For the reasons which follow, the Court grants Defendant OmniAmerica Group's motions for summary judgment as to the claims of Plaintiffs and the amended cross-claim of the Defendants Farag, but denies their motion for summary judgment as to the third-party complaint of Defendants Farag.

## I

■ Summary judgment is just as appropriate in a trademark infringement case as in other litigation and is granted or denied on the same principles. *WSM, Inc. v. Tennessee Sales Co.,* 709 F.2d 1084, 1086 (6th Cir. 1983); *SCI Systems, Inc. v. Solidstate Controls, Inc.,* 748 F.Supp. 1257, 1260 (S.D.Ohio 1990). A party is entitled to summary judgment on a claim when the pleadings, depositions, and answers to interrogatories and to admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 "mandates" that summary judgment be entered against a party who fails to make a

sufficient showing to establish an element essential to a party's case, and on which party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Although the Court draws all reasonable inferences in favor of the nonmoving party, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A party opposing the grant of summary judgment may not rest upon the mere allegations or denials of the pleadings, but must come forth with some probative evidence supporting its claim showing that there is a genuine issue for trial. Otherwise, summary judgment is appropriate. Fed.R.Civ.P. 56(e); *Huizinga v. U.S.,* 68 F.3d 139, 143 (6th Cir.1995).

## II

Plaintiffs Freed brought this action claiming that defendants violated their rights to a service mark in the phrase "Moondog Coronation Ball." Defendants say that Plaintiffs had no right in the phrase and they are entitled to judgment.

Alan Freed was a Cleveland radio disk jockey. In January 1965, he died in California. In October 1996, more than 30 years after his death, his heirs filed this mark infringement suit. They claim that in March 1952, Freed used the phrase "Moondog Coronation Ball," that such phrase became a service mark and that they have a right to the ownership of this mark.

The Farag defendants also filed a third-party complaint alleging restraint of trade by OmniAmerica and Nationwide. In their third-party complaint the Defendants Farag request injunctive relief, compensatory and punitive damages.

---

1. The Plaintiffs are Lance Freed, Alana Freed, Alan Freed, Jr., Sieglinde Freed and Inga Freed Masken. They are the children and surviving spouse of Alan Freed.

2. Defendant OmniAmerica Group and Third–Party Defendant Nationwide Communications Corp. are the past and present owners of Cleveland radio station WMJI.

3. The amended cross-claim against Thacker and OmniAmerica Group allege fraudulent registration of the service mark in Moondog Coronation Ball with the Ohio Secretary of State's office.

4. Henry and Omar Farag are musical concert promoters in the Cleveland area doing business as Street Gold Records. Ltd., which does business as Canterbury Productions/Farag Music BMI, and the Moondog Coronation Ball Corporation.

Plaintiffs make claim against Defendants Farag. The Farag Defendants are musical concert promoters in the Cleveland area and against certain defendants associated with Cleveland radio stations WMJI, WHK and WMMS.[5]

Plaintiffs Freed claim a right to ownership of "Moondog Coronation Ball" through Alan Freed. Alan Freed came to the Cleveland radio scene in 1951 as a disc jockey playing classical music. Near July 11, 1951, Freed changed the radio program and began using a rock n' roll format. In this new format, Freed used a recording in 1951 called "Moondog Symphony."[6] After a positive response, Freed began calling himself "Moondog."

Alan Freed's show became popular with the teenage listening audience. In response, Freed and others formed a partnership to promote a dance billed as the "Moondog Coronation Ball." The partnership scheduled the dance for March 21, 1952. At the dance, mayhem ensued when an unruly crowd outside the filled arena rushed the doors and Cleveland police closed the dance before midnight. Plaintiffs Freed claim rights to the service mark "Moondog Coronation Ball" from this date. Plaintiffs Freed say the defendants, and their predecessors in interest, were not authorized to use this mark in connection with several rock n' roll promotions in the Cleveland area in 1986, 1992, 1993, 1994, 1995, 1996, and 1997.[7]

**5.** Defendant Dean Thacker was a general manager of three Cleveland radio stations named in the complaint and a partner in Defendant OmniAmerica Group. OmniAmerica Group owned radio stations WMJI, WHK, and WMMS at the time this cause of action arose. The three stations are now owned by Nationwide Communications Corporation, a third-party defendant in this litigation.

**6.** The song was recorded by Louis Harding, a New York City street musician. The recording included a dog engaging in a mournful howl. Freed also often played another recording written by Freddie Mitchell called "Moondog Boogie."

**7.** The 1986 event was billed as "Moondog Coronation Ball II." In other years, defendants used the phrase "Moondog Coronation Ball."

**8.** ·Under 15 U.S.C. § 1125(a):

## III

In their complaint, Plaintiffs Freed claim Defendants made false designation of origin and false description of representation under Section 43(a) of the Lanham Act.[8] Plaintiffs Freed also claim service mark infringement (Count Two), common law theft and conversion of the mark (Count Three), a violation of Ohio's Deceptive Trade Practices Act Ohio Rev.Code § 4165.02 (Count Four), unlawful promotion and production of the 1997 concert (Count Five), and a *per se* violation of Ohio Rev.Code § 1329.56(C) and (D) (Count Six).

Defendants OmniAmerica and Thacker deny that Plaintiffs had rights in the service mark to the phrase "Moondog Coronation Ball." Principally, these defendants say Alan Freed never established such a service mark. Even if established, these defendants say the Plaintiffs Freeds' enforcement of the service mark is stopped by the doctrine of laches.

"Estoppel by laches" occurs when trademark holder inexcusably delays its attempts to prevent infringing use to the prejudice of innocent users. Lanham Trade–Mark Act, § 32(1), 15 U.S.C. § 1114. In this Circuit, the statute of limitations applicable to analogous actions at law is used to create a "presumption of laches." This principle "presumes" that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period. *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir.1985), *cert.*

(1) An person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986).

■ As the events which gave rise to this action occurred in Ohio, the Court looks to that state's relevant statute of limitations. Federal courts have found the analogous statute in infringement cases to be Ohio's two-year statute of limitations for injury to persons and personal property found in Ohio Rev.Code § 2305.10.[9] *Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960, 963 (6th Cir.1987);[10] *SCI Systems, Inc.,* 748 F.Supp. at 1261.

■ All material facts show that Plaintiffs Freed knew of Defendants' use of the phrase "Moondog Coronation Ball" more than two years prior to the filing of this complaint. The Freeds delayed in asserting their claims and acquiesced in defendants' use of the mark. David Freed, the DJ's brother, was aware of the use of the mark in 1986. In 1992, both David Freed and Lance Freed were interviewed in relation to WMJI's promotion of the 1992 concert. Having failed to protect any rights in the service mark within two years, the heirs of Alan Freed did nothing to protect their rights before this October 9, 1996, suit. As such, the Plaintiffs are stopped from claiming against Defendants.[11]

Having failed to timely claim against Defendants, and because Plaintiffs Freed have acquiesced in the use of the service mark by others, they are estopped from claiming damages from these defendants.

■ However, a finding that laches bars a plaintiff's suit for damages under the Lanham Act does not end our inquiry because plaintiffs asked for injunctive relief as to future conduct. Prospective relief in an infringement action is not barred by a finding of laches. *SCI Systems, Inc.,* 748 F.Supp. at 1261–62.

> To defeat a suit for injunctive relief, a defendant must also prove elements of estoppel which requires more than a showing of mere silence on the part of a plaintiff; defendant must show that it had been misled by plaintiff through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence, or conduct amounting to virtual abandonment of the trademark. *Id.* (citing *TWM Mfg. Co., Inc. v. Dura Corp.,* 592 F.2d 346, 350 (6th Cir.1979), *cert. denied after remands,* 479 U.S. 852 (1986)).

Under Ohio law as well a party invoking laches, to be successful, must show that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim. *State, ex rel. Caspar v. Dayton,* 53 Ohio St.3d 16, 20, 558 N.E.2d 49 (1990).

■ OmniAmerica claims that the Freeds abandoned the mark, if they ever had any interest in it, because Alan Freed did nothing to show use of the mark in commerce from the mid–1950s until his death in 1965 and his heirs took no steps to protect and use the mark in commerce from 1986 until the filing of this suit ten years later.

---

9. Since the complaint in this case was filed in a federal court in October 1996, the Court finds that the amended version of § 2305.10, which took effect on January 27, 1997, would not apply. § 2305.10(F). The former version of § 2305.10 which applies to this case states that a lawsuit claiming injury "shall be brought within two years after the cause thereof arose," while the amendment included in the Ohio General Assembly's House Bill 350 last session (the "Tort Reform Bill") now states that the action shall be brought "within two years after the cause of action accrues." § 2305.10(a). The Court finds the difference, in any event, immaterial to the outcome of this action.

10. In *Ameritech,* the Sixth Circuit stated:
In this case, the analogous Ohio law is the two-year statute of limitations for injury to persons

and personal property, Ohio Rev.Code § 2305.10, and plaintiff's six month delay falls well within its bounds. 811 F.2d at 963.

11. Plaintiffs' effort to stop this does not persuade. First, Plaintiffs Freed do not give *"pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits "* showing any material fact. Civ. R. 56. Second, Freeds' claim that defendants' use of the mark in 1986 and 1992 was "rather benign" and "not repugnant" does not show excuse for failing to enforce any property rights. No probative evidence justifies plaintiffs' acquiescence in defendants' use of the mark in the ten-year period during which radio stations sponsored occasional "Moondog Coronation Ball" revivals.

The parties agree that Alan Freed created the phrase "Moondog Coronation Ball" for a single concert in 1952. The evidence is clear that Freed never intended to resume a commercial use of the term. A trademark only can be established and maintained by using that mark in connection with commerce. *See* 15 U.S.C. § 1127 (definition of a service mark includes "bona fide intention to use in commerce"). A period of non-use of a mark is evidence from which one can infer intent not to resume commercial usage of the mark. Indeed, a trademark is presumed abandoned after three consecutive years of non-use. For purposes of this case, the relevant definition of "abandoned" under the federal statute is:

> (1) When its [the mark's] use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark. 15 U.S.C. § 1127.

Only evidence of actual commercial use of a mark in connection with goods or services can rebut the inference of abandonment. Alan Freed used this phrase in 1952 and possibly a few more times between the infamous concert and 1954. Any dispute over the number of times Freed used the mark in the 1950s is not a dispute over a material fact. Plaintiffs affirm that Freed did not intend to use the phrase "Moondog Coronation Ball" after the 1952 concert. Plaintiffs admit that Freed did not use the phrase at all after 1954. A review of the evidence submitted by all parties shows that the phrase was not used commercially between 1954–1965, the year of Alan Freed's death, or from 1965–1986, the year WMMS began the "Moondog Coronation Ball" revivals, except that plaintiffs did receive some royalties for recordings and sold rights related to a 1970s-era movie. Plaintiffs offer no evidence which rebuts the presumptions of non-use, intent not to resume commercial use, and abandonment of the mark. Based on the evidence before the Court, one must conclude that if Alan Freed ever established a mark, he abandoned it before his death.

None of the evidence before the Court shows Freed's heirs using the phrase as a mark (with the possible exception of the royalty payments and movie rights). Plaintiffs try to avoid this conclusion by offering the affidavit of Lance Freed in which Lance Freed swears that "vinyl records containing the recordings of Alan Freed contain the words 'Moondog,' 'King of the Moondoggers,' and 'The Moondog Coronation Ball.'" Similarly, Lance Freed swears in his affidavit that he collected royalties in the 1970s for allowing the producers of "American Hot Wax" to use Freed's persona as well as the terms "Moondog," "King of the Moondoggers," and "Moondog Coronation Ball." Assuming there was such a contract, the Court believes this would be insufficient evidence of use of the mark. Plaintiffs also offer evidence of royalty payments, but these royalties are for recordings that may or may not make any reference to the mark. They do not necessarily show payment to Freed's heirs for performances directly related to the phrase at issue. It is difficult to escape the conclusion that plaintiffs were not using the mark in connection with the sale of goods or services. If anything, plaintiffs' evidence shows a token level of use of the mark. The Court notes that more than three years elapsed between the time any contract for movie rights was executed in the 1970s and the 1986–97 period when radio stations put on Moondog Coronation Balls.

It would be inequitable to enjoin the defendants' use of the mark because plaintiffs have acquiesced in defendants' use of the mark for the past ten years while defendants have made a substantial investment in establishing the goodwill that the mark "Moondog Coronation Ball" currently enjoys in connection with WMJI's annual spring concert. *See OmniAmerica Group v. Street Gold Records, Ltd.*, 916 F.Supp. 672 (N.D.Ohio1996) (Preliminary Injunction Order issued Feb. 20, 1996) (Nugent, J.) (referring to goodwill in name created by WMJI). Plaintiffs sat idly by for ten years as defendants built goodwill for its "Moondog Coronation Ball." Plaintiffs' claims cannot overcome the defendants' affir-

mative defense of laches (two years) and estoppel by abandonment (three years).

Therefore, the Court finds non-use of the mark, that the Freed heirs have not rebutted a presumption of intent not to resume commercial use of the mark, and finds that they abandoned the mark. OmniAmerica has been materially prejudiced by the Freeds' delay in asserting their claim, especially the inactivity of the plaintiffs during the past ten years during which Cleveland radio stations promoted "Moondog Coronation Ball" concerts. The Plaintiffs Freed are not entitled to prospective relief on Counts One and Two of their amended complaint.

As outlined above, the Court finds that the Freed heirs abandoned the mark and no longer have any rights to it which disposes of all claims in the six counts of plaintiffs' complaint. Ownership of the rights in the mark is a prerequisite to recovery on these counts.

## IV

Defendant OmniAmerica Group and Third–Party Defendant Nationwide Communication Corp. also filed a second motion for summary judgment in their favor on all cross-claims and on the third-party complaint filed by the Farag defendants.[12]

The Defendants Farag allege in their amended cross-claim that OmniAmerica's assertion of rights in the mark prevented them from being able to license the mark from its "rightful" owners, the Plaintiffs Freed, thereby causing loss to the Defendants Farag. OmniAmerica is entitled to summary judgment on this claim because the Plaintiffs

Freed are not the "rightful" owners of the mark as discussed above.[13]

## V

Section 2 of the Sherman Act makes it unlawful for anyone to "monopolize, or attempt to monopolize, or combine or conspire . . . to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. A successful plaintiff must establish "(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 917 F.2d 1413, 1419 (6th Cir.1990), *cert. denied,* 502 U.S. 899, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991) (citation omitted). The elements of a Section 2 violation for the offense of an attempt to monopolize include: (1) specific intent to monopolize; (2) anticompetitive conduct; and (3) a dangerous probability of success. *Id.* at 1431.

The Court finds that the refusal to deal claim in this third-party complaint, which Nationwide has treated as an allegation of a violation of Section 2 of the Sherman Act, is not yet ripe for summary judgment. In the Court's view, there appear to be genuine issues outstanding concerning material facts and these putative disputes preclude ruling as a matter of law. For example, an incomplete record discloses possible disputes related to whether OmniAmerica is a third-party defendant; the exact definition of the relevant market; the type of competitive product at issue; the extent of any monopolization

---

**12.** Defendants Farag cross-claimed against OmniAmerica Group and Thacker alleging promissory estoppel and fraud claiming Thacker and OmniAmerica Group hired the Farags to promote the revivials while misrepresenting or concealing the rightful ownership in the phrase "Moondog Coronation Ball." The Defendants Farag subsequently amended their cross-claims against OmniAmerica and filed a third-party complaint against Nationwide seeking $ 2 million in damages. The amended cross-claim alleges the service mark was falsely and fraudulently registered with state officials in 1986, and that OmniAmerica's false claim of ownership prevented the Freed heirs from licensing the mark to the Farags.

**13.** The Court need not reach the issue of whether the settlement reached in the earlier litigation barred the amended cross-claim as well. The Defendants Farag do not contest OmniAmerica's assertion that the Farags dispensed with their original cross-claims which were permitted to go forward under the terms of that settlement.

The Defendants Farag and OmniAmerica Group were parties to two other cases in this Court (*Farag, et al v. Thacker, et al,* Case No. 96 CV 293 and *OmniAmerica Group v. Street Gold Records, et al.,* 916 F.Supp. 672,) which have since been consolidated, settled and voluntarily dismissed.

power held by one radio station; and whether Nationwide is bound by, and can benefit from, the terms of the settlement agreement binding the Farags and OmniAmerica in the earlier litigation.

These essentially factual disputes about matters essential to a proper Section 2 analysis preclude the Court at this time from granting summary judgment as to that portion of the motion related to the third-party complaint. *See 60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987) ("when summary judgment denied disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."). The Court notes that a nonmoving party, Defendant Henry Farag, submitted an affidavit concerning several matters related to the Cleveland radio market. The Court, without weighing the evidence or determining the truth of certain matters or drawing inferences, will take as true all evidence presented by the nonmoving party, and deny at this time summary judgment on the third-party complaint claim. *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir.1996).

## VI

The Court grants the defendants' motion for summary judgment on all claims raised by the Plaintiffs Freed in this service mark infringement action as plaintiffs cannot overcome the defense of laches and estoppel by abandonment related to their non-use of the phrase "Moondog Coronation Ball" as a mark in commerce.

The Court further grants partial summary judgment on the motion filed by OmniAmerica Group and Nationwide Communications on the Defendants Farag amended cross-claim, but denies summary judgment on the third-party complaint Sherman Act claim as not yet ripe for decision.

IT IS SO ORDERED.